THE  PEOPLE  ex  rel.  PATRICK  ENNIS, Appellants,  *v.*
FREDERICK A. SCHROEDER, Respondent.

Under the amended charter of the city of Brooklyn of 1873 (chap. 863, Laws of 1873) a resolution of the common council confirming an appointment, made by a justice of the peace of that city, of a clerk of his court, must be approved by the mayor, or upon his return thereof with his objections, must be passed by a two-thirds vote in order to validate the appointment.

The provision of said charter (§ 10, title 2) requiring every ordinance or resolution of the common council to be approved by the mayor or returned with his objections, extends to all acts of that body, whether legislative or otherwise.

(Argued January 17, 1879 ; decided February 4, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, denying an application for a mandamus. (Reported below, 12 Hun, 413.)

The facts appear sufficiently in the opinion.

*James  Troy,* for appellant. The appointment of the relator was valid. (*Atchley's Case,* 4 Abb., 35.)

*William C. De Witt,* for respondent. A mandamus will not lie in this case. (*People ex rel. Perry* v. *Thompson,* 25 Barb., 73; *People ex rel. Mygatt* v. *Suprs. of Chenango Co.,* 11 N. Y., 563, 568; *People ex rel. Green* v. *Wood,* 35 Barb., 653, 656.)

MILLER, J. The relator was appointed by one of the justices of the peace of the city of Brooklyn to the office of the clerk of the court of said justice in the month of November, 1876, and the appointment upon being presented to the common council, was confirmed by that body. The resolution confirming the appointment was sent by the common council to the mayor, and he returned the same to the common council with a refusal in writing to approve of the same. The salary of the relator for two months, was duly audited; the city comptroller issued warrants to the treasurer therefor, and the mayor, the respondent, refused to sign the warrants, as was necessary in order to obtain payment. The relator by mandamus seeks to compel the mayor to attach his signature to the warrants issued by the comptroller.

The question presented is whether the appointment of the relator was valid, without the sanction and approval of the mayor. The determination of the question depends upon the construction to be placed upon various provisions of law relating to the city of Brooklyn. By section 1, of chapter 337, of the Laws of 1862, power is conferred upon any justice of the peace of the city of Brooklyn, to nominate a clerk, with the consent of the common council of said city, who is to hold office during the pleasure of the justice appointing him. By section 1, title 2, of chapter 384 of the Laws of 1854, the common council of the city of Brooklyn, consisted of the mayor, and the board of aldermen. Although the mayor constituted a portion of the common council as we have seen, yet at the same time he was vested with authority to veto any appointment which the common council consented to, which did not meet his approval.

162          People ex rel. Ennis v. Schroeder.          [Feb.,

Opinion of the Court, per Miller, J.

(Title 2, § 10, chap. 384, Laws of 1854.)   In *Cassidy* v. *The City of Brooklyn* (60 Barb., 105, affirmed in this court in 47 N. Y., 659), this question was distinctly presented. Cassidy had been appointed a clerk of one of the justices' courts of Brooklyn, with the approval of the common council. Upon the appointment being sent to the mayor, he vetoed the appointment, and the court held that to render the appointment valid, the concurrence of the mayor was required.

This decision sustains the principle that the assent of the mayor in his capacity of mayor, was essential to the validity of such an appointment.   Whatever criticism may be indulged as to the *Ackley Case* (4 Abb., 35), which is cited and commented upon in the opinion in *Cassidy* v. *The City of Brooklyn, supra,* it cannot affect the principle decided in the latter case, and it must be assumed as decisive of the law at the time, and until the passage of the amended charter, chapter 863, Laws of 1873. By section 1, of title 2, of that act, the legislative power of the corporation, is vested in the board of aldermen, who were to be called the common council, and by section 2 of the same title, the common council were to consist of the aldermen to be elected from each ward, as provided by the act referred to. This provision did not, I think, affect the right of the mayor to refuse his consent to an appointment of this kind, for although he was not a member of the common council, a subsequent provision, section 10, title 2, of the act of 1873, requires that every ordinance or resolution of the board of aldermen, shall before it takes effect, be presented and certified to the mayor, and if he approves of it, he shall sign it, and if not, shall return it with his objections, when it may be passed by a vote of two-thirds of the members.

The resolution of the common council confirming the appointment of the relator, which was transmitted to the mayor, and which he returned without his approval, comes directly within the terms of the provision last cited, and it follows that without such approval, the relator failed to receive a legal appointment as clerk. The object of the

provision evidently was to give the mayor the power to veto all acts of the common council, which did not meet his approval, and in this form to restrict improvident action by that body. It is no answer to this construction, I think, to say, that the act of the common council was neither a legislative act, nor an ordinance, nor a resolution, because it was an act confirming an appointment; for its confirmation was not only in the form of a resolution, but that body had no authority to make the appointment valid without the approval of the mayor. The extent of its authority was by resolution, or by ordinance, to express its assent to the appointment of the relator, and when this had been done, and a resolution to that effect sent to the mayor, it had fulfilled its functions, and the appointment was not perfected, until the mayor had approved, or if he dissented from the resolution, by a vote of two-thirds the common council had overruled his veto.

The act of 1873 therefore did not alter the provision of law which had previously existed in reference to the approval of the appointment by the mayor, or make any change in that respect. In fact the provision is incorporated in the acts of 1854 and 1873, as we have seen, and the power of the mayor to approve or to refuse his assent, is not affected, because he was not a member of the common council. The right to veto ordinances and resolutions, clearly extended to all acts of that body, whether legislative or otherwise, and in no sense can the provision in the act of 1873, constituting the common council, be construed as interfering with the power of the mayor to interpose his objection to the appointment of the relator. The mayor had no right to act as a legislator, but he retained in full force the right to disapprove of all ordinances, acts, and resolutions which did not meet his approval..

It follows that the judgment in the court below was right, and must be affirmed.

All concur.

Order affirmed.