## STATE, EX REL. WALKER, *v.* WAGNER.

[No. 21,041.   Filed November 6, 1907.   Rehearing denied February 27, 1908.]

1.   MUNICIPAL CORPORATIONS. — *Councilmen.*—*Vacancies.*—*Appointments.*—*Method.*—The appointment of a councilman to fill a vacancy, under §8646 Burns 1908, Acts 1905, pp. 219, 242, §45, may be by ballot, *viva voce* vote, motion or resolution, such statute being silent as to method.   p. 146.

2.   OFFICERS.—*Appointment.*—*Executive or Legislative Act.*—*Councilmen.*—The appointment to an office is an executive act, but the power to name the persons or body who shall appoint, is legislative.   p. 147.

3.   MUNICIPAL CORPORATIONS.—*Appointments.*—*Constitutional Law.*—The power to make appointments to fill vacancies in municipal offices need not be vested in the executive officers of such corporations, the constitutional provision (Art. 3) regarding the distribution of power into three departments not applying to municipal corporations.   p. 147.

4.   SAME. — *Councilmen.* —*Vacancies.*—*Appointments.*—*Resolutions.*—*Veto.*—The mayor of a city, under §8654 Burns 1908, Acts 1905, pp. 219, 245, §52, providing that mayors of cities may veto ordinances, orders, or resolutions of the council, and in such cases such ordinances, orders, or resolutions shall not become laws, unless passed again by a two-thirds vote, has no right to veto a resolution appointing a councilman to fill a vacancy.   p. 148.

From Shelby Circuit Court; *Will M. Sparks,* Judge.

Action by the State of Indiana, on the relation of Harry H. Walker, against William H. Wagner.   From a judgment for defendant, plaintiff appeals.   *Reversed.*

*John F. Walker, U. E. Tindall, K. M. Hord* and *Edward K. Adams,* for appellant.

*Carter & Morrison* and *A. E. Lisher,* for appellee.

MONKS, J.—The relator filed an information in the nature of a *quo warranto* for the purpose of ousting appellee from the office of councilman from the fourth ward of the city of Shelbyville and obtaining possession thereof himself.   A demurrer for want of facts was sustained to the informa-

tion, and, relator refusing to amend, final · judgment was rendered in favor of the appellee.

The action of the court in sustaining said demurrer is called in question by the assignment of errors.

It appears from the information, among other things, that under the provisions of section forty-five of the act of 1905 (Acts 1905, pp. 219, 242, §8646 Burns 1908) the common council of the city of Shelbyville, a city of the fifth class, adopted a resolution appointing the relator a councilman from the fourth ward of said city to fill a vacancy in that office caused by the resignation of the councilman from that ward. The mayor of said city, assuming that he had the power to veto the resolution by the adoption of which said appointment was made, vetoed the same, and the common council of said city at its next meeting adopted a resolution appointing appellee to fill said vacancy. Appellee, by virtue of said appointment, took possession of and entered upon the discharge of the duties of said office. Section 8646, *supra,* conferred upon the common council of said city the power to fill said vacancy. If the mayor of said city had the power to veto the relator's appointment to said office the demurrer to the information was properly sustained and the judgment must be affirmed, but if he did not have that power the judgment must be reversed. The veto power is conferred upon the mayor by section fifty-two of said act of 1905 (§8654 Burns 1908), which provides: "No ordinance, order or resolution of the council shall become law, or operative until it has been signed by the presiding officer thereof, and approved in writing by the mayor, or passed over his veto, as hereinafter provided. * * * Every ordinance, order or resolution of the common council shall, immediately upon its passage, enrollment, attestation and signature by the clerk and presiding officer, be presented by the city clerk to the mayor, and a record of the time of such presentation made by the clerk. If the mayor approve such

ordinance, order or resolution, he shall enter his approval thereon and sign the same, and the ordinance, order or resolution shall become a law.  If he do not approve the ordinance, order or resolution he shall return it to the clerk, with his objection in writing, within ten days after receiving it, and the clerk shall present the same to the common council at its next meeting.  *  *  *  And in all cases of disapproval by the mayor such ordinance, order or resolution shall not become a law, unless at its next regular or special meeting after the time named for the mayor's action, the council shall again pass the same by a two-thirds vote of all the members elect.''

As the law does not in terms prescribe the method or manner by which the common council shall fill a vacancy in the office of councilman, the method or manner of the appointment is not material, but the same may be made by ballot, *viva voce* vote, or by the adoption of a motion or resolution declaring that the person therein named be appointed to fill the vacancy. *State, ex rel.,* v. *McFarland* (1898), 149 Ind. 266, 270, 39 L. R. A. 282, and cases cited; 2 Abbott, Mun. Corp., §510.  Appellee concedes that if the council had elected the relator by any one of the methods mentioned, except by resolution, the mayor would have had no power to approve or disapprove its action, but that having chosen the relator by resolution, and the mayor having vetoed the same, the relator was not elected, because the resolution was not passed over his veto by ''a two-thirds vote of all the councilmen elect.''  Citing *People, ex rel.,* v. *Schroeder* (1879), 76 N. Y. 160; *Kindermann* v. *West Bay City* (1898), 117 Mich. 516, 76 N. W. 10.  It will be observed that §8654, *supra,* which confers the veto power upon the mayor, provides: ''No ordinance, order or resolution of the common council shall become a law, or operative until  *  *  *  approved in writing by the mayor, or passed over his veto.  *  *  *  If the mayor approve such ordinance, order or resolution, he shall enter his ap-

State, ex rel., *v.* Wagner—170 Ind. 144.

proval thereon and sign the same, and the ordinance, order or resolution shall become *a law*,   *   *   *   and in all cases of disapproval by the mayor such ordinance, order or resolution *shall* not become *a law*, unless   *   *   *   the council shall again pass the same by a two-thirds vote of all the members elect.''    (Our italics.)

It is evident, we think, from the language used, that the legislature intended to confer upon the mayor the power to veto, not appointments to office, but such acts of the common council as usually, in such bodies, take the form of resolution, order or ordinance.    While the appointment to office is not a legislative function, yet the power to name the persons or body who shall make the appointment is legislative.    *City of Terre Haute* v. *Evansville, etc., R. Co.* (1897), 149 Ind. 174, 183, 184, 37 L. R. A. 189, and cases cited.    Ordinarily an appointment to public office is in its nature an executive act.    2 Am. and Eng. Ency. Law (2d ed.), 475, note 4; *State, ex rel.,* v. *Barbour* (1885), 53 Conn. 76, 22 Atl. 686, 55 Am. Rep. 65, 68, and cases cited; *State, ex rel.,* v. *Noble* (1889), 118 Ind. 350, 361, 362, 4 L. R. A. 101, 10 Am. St. 143; *State* v. *Hyde* (1889), 121 Ind. 20, 30-34, and cases cited.

Although the appointment to office is in its nature an executive act, it does not follow that the power to make appointments to city and town offices must be vested in the executive officer of such municipal corporation.

The provisions of the state Constitution (Art. 3) in regard to the distribution of power do not apply to municipal government and officers.    *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 233-238.    It will be found from an examination of the authorities cited in this opinion that it has been uniformly held that the legislature may vest the power of appointment to office in the department of the government of cities or towns which is authorized to exercise legislative power.

As the authority granted to the common council to fill

148       SUPREME COURT OF INDIANA,

vacancies in the office of councilman is in its nature execu-
tive, the mayor's power to veto does not apply to
4.  such appointments.  *Haight* v. *Love* (1876), 39 N. J.
L. 14, 19-21, and cases cited; *Erwin* v. *Mayor, etc.*
(1897), 60 N. J. L. 141, 145-147, 37 Atl. 732, 64 Am. St.
584, 587-589; *State, ex rel.,* v. *Miller* (1883), 45 N. J. L.
251, 255-256; *Matter of North* v. *Cary* (1874), 4 Thomp. &
Cook (N. Y.) 357, 362-363; *Achley's Case* (1856), 4 Abb.
Prac. 35; *Rich* v. *McLaurin* (1903), 83 Miss. 95, 35 South.
337; *State, ex rel.,* v. *Longdon* (1897), 68 Conn. 519, 521-
522, 37 Atl. 383.  As was said in *Haight* v. *Love, supra,* on
page 20: ''The justice of this conclusion is seen also in
considering the inaptitude of the word 'resolution' to sig-
nify the election of an officer.  While, indeed, an officer may
be chosen by resolution, such a mode is rarely adopted.
Usually a vote by ballot or *viva voce,* indicates the choice.
And though it is quite clear that the legislature did not in-
tend to make the mayor's power dependent on the form in
which the boards acted [*Pierson* v. *Dover* (1898), 61 N. J.
L. 404, 39 Atl. 675, and cases cited], it is almost equally
sure that they did not mean to extend his power beyond such
action as usually, in organized assemblies, takes the form of
resolution or ordinance.''

In *Erwin* v. *Mayor, etc., supra,* the mayor of the city was
given authority to veto the ''acts'' of any board of the city,
and it was required that copies of all resolutions and ''other
matters'' should be furnished the mayor for consideration,
and the board was empowered to pass any vetoed ''resolu-
tion or other matter'' over the mayor's objections, by a two-
thirds vote.  It was insisted in that case that a resolution
appointing to office was subject to the mayor's veto.  The
court says: ''If a literal construction be given to the pro-
visions of the section thus appealed to, it is obvious that
the business of any municipal board will not only be hamp-
ered and delayed, but practically be rendered impossible
to be performed.  Resolutions to approve minutes, to lay

on the table, to postpone, to adjourn, and numberless others, are resolutions expressing acts of such boards. If all such acts are to be presented to the mayor, and only be effective upon his approval or their passage over his veto, the business of the board could not be done. It is so incredible that the legislative intent was to produce such a result that a restricted construction of these provisions, consistent with their practical operation, should be adopted if possible. A question identical with that thus presented was considered by the supreme court in *Haight* v. *Love* [1876], 39 N. J. L. 14. By the provision of a section of a former charter of Jersey City the mayor was given power to veto the 'action' of any municipal board, and all ordinances and resolutions were required to be sent to him for consideration. If any were vetoed, it was provided that the action resolved upon or ordained should be void, unless such board should sustain it by a two-thirds vote at its next meeting. The point presented in the case was whether the appointment, by the board of finance, of a city collector required to be presented to the mayor for his approval. The opinion of the court as delivered by Mr. Justice Dixon, who justly pointed out the impracticability of a literal construction of those provisions, and who concluded that the actions which the mayor might approve or veto must belong to the class of acts usually performed by such bodies by resolutions or ordinances, viz., acts of a legislative character. As appointments to office were not of that character and were not usually made by resolution, but rather by ballot or *viva voce*, the legislation then under consideration was construed as inapplicable to acts of such boards appointing to office, and it was held that such acts did not require the approval of the mayor. With the views expressed in that case I am in entire accord, and I think them applicable to the statutory provisions now under consideration. The absurd result of a literal construction of those provisions tends to induce the belief that such construction was not within the legislative

intent, and the fact that it is required that the mayor is to be informed of 'resolutions and other matters' for consideration in respect to his approval or veto, justifies the conclusion that the 'acts' which are thus to be submitted to him for approval are only such as are usually performed by such bodies by resolutions or other similar evidences of action. 'Other matters' is a phrase not very aptly chosen, but, in my judgment, it can only mean matters of a similar character to resolutions, of which I know none but ordinances. The result is, that the power to appoint a corporation attorney, if only apparent, was conferred upon the board of finance, and their appointment did not require the mayor's approval.''

In *Matter of North* v. *Cary, supra,* the court says: ''I conclude that the appointment of North was not affected by the veto of the mayor. The veto power is conferred upon the mayor by section nineteen, title four, of the charter, and the provision upon that subject is as follows: 'He shall have the power to veto any resolution or ordinance of the common council.' It is not pretended but that North received the number of votes of the members of the common council required for his appointment. The proceeding at which the veto was aimed was an appointment to office, and not a resolution or ordinance adopted in the transaction of the ordinary business of the common council. This distinction can be more readily conceived than accurately described. When we speak of an appointment to office a very different idea is conveyed to the mind than when the mere adoption of a resolution or ordinance by a public body is spoken of. It is proper for us to inquire again, what was the intention of the legislature in this particular? Was it the design to confer upon the mayor such control over appointments to office made by the common council as would necessarily follow if the veto power was possessed by the mayor to the extent claimed by him? If he possesses the power to the extent claimed, then the mayor

may, by veto, necessitate a vote of two-thirds of all the members of the common council to make a valid appointment to office. Section one of title four of the charter, after conferring the veto power upon the mayor, proceeds as follows: 'The common council may at their next regular meeting proceed to reconsider the same; if two-thirds of all the members elected then agree to pass the same, it shall take effect as a law.' The language thus employed seems inappropriate, when applied to an appointment to office, but quite proper when applied to an ordinary resolution or ordinance. But aside from the technical language employed it seems quite clear from the charter and the nature of the proceeding that no such power was intended to be conferred upon the mayor. The result would be, possibly and even probably, to deprive a party of an office, by such indirect means, by requiring a two-thirds vote to overcome the veto of the mayor, when only a majority vote would make the appointment in the first instance. The adjudications to which we have referred justify a construction which seems in accordance with the intention of the lawmakers in framing the charter.''

In *Achley's Case, supra,* it was claimed in the argument that, notwithstanding the appointment was given exclusively to the common council, and that the mayor was not a member thereof, yet the action of the common council was subject to his approval or rejection, as the two boards had communicated to each other their action upon this subject in the form of a resolution, and as section twelve of the charter of 1830 requires that any act, ordinance or resolution which shall have passed the two boards of the common council, before it shall take effect shall be presented to the mayor for his approval. If he approve, he shall sign it; if he disapproves, he shall return it, within ten days, to the board in which it originated, with his objections. The court says: ''It is apparent from these provisions of the charter, that the action of the mayor is confined to such

matters as shall have passed both boards, and which, with or without his sanction, would 'take effect as an act or law of the corporation.' We have seen that the law conferring power of appointment of commissioners of deeds devolved its exercise upon the common council, and not upon the corporation of the city. The act or resolution of appointment became an act of the common council, and not an act or resolution of the corporation, and it is only in reference to the latter that the coöperation of the mayor is invoked. The mayor, as the executive of the corporation, its chief officer, has properly confided to him a supervision of any act, ordinance or resolution which is to take effect as an act or law of the corporation; but it does not follow, from this, that such supervision or control exists as to executive duties devolved by law upon the common council. It was conceded in the argument that, if the common council had met in a joint meeting of the two boards, and made these appointments, the mayor would have had no authority or right to interfere. I cannot see that the form of communication which the two boards have adopted to communicate to each other their determination, in reference to these appointments, changes or affects, in the least, the powers or rights of any of the departments of the city government. The boards might have communicated with each other by letter, committees or messengers. What the law requires is, that a majority of each should concur in an appointment; and when such concurrence is ascertained, the appointment becomes absolute, irrevocable and complete for the term of the appointee. The boards having adopted the form of a resolution for the purpose of more easily or conveniently communicating with each other, cannot in any way alter or affect the legality of their proceedings, and render inchoate or ineffectual what would otherwise be complete and final.''

In *People, ex rel., v. Schroeder* (1879), 76 N. Y. 160, cited by appellee, the mayor was authorized to veto every

ordinance or resolution adopted by the board of aldermen. The board of aldermen adopted a resolution confirming the appointment of a clerk by a justice of the peace. The court held that said board could only express its assent to the appointment by resolution or ordinance, and that therefore the same was subject to the mayor's veto. It is evident that this case is not in point here, for the reason, as we have shown, that in this State the appointment of a councilman may be made by other methods than by resolution or ordinance. *Kindermann* v. *West Bay City* (1898), 117 Mich. 516, 76 N. W. 10, cited by appellee to sustain his contention, is not in point because the veto in that case was sustained on the ground that it was aimed at the resolution to provide for the office and not at his election. It is clear that the mere fact that the relator was appointed by resolution, instead of by motion, ballot or *viva voce* vote of the council, did not empower the mayor to veto the same.

It follows that the court erred in sustaining the demurrer to the information. Judgment reversed, with instructions to overrule the demurrer to the information and for further proceedings not inconsistent with this opinion.