KIMBALL v. JAMES, Mayor, et al.

(Supreme Court, Special Term, Erie County. June, 1912.)

1. MUNICIPAL CORPORATIONS (§ 107*)—AUTHORITY AND POWER OF MAYOR—VETO.

The Dunkirk city charter provided that every order and resolution of the common council should be presented to the mayor before it should be of force; that, if he should not approve it, he should return it with his objections to the council, which should enter the objections upon its journal and reconsider it and might, by four-fifths vote, pass it over the mayor's veto. Laws 1910, c. 89, authorizing the submission of the question of building a municipal dock to the taxpayers of the city of Dunkirk, provided by section 2 that on adoption the council might provide for the construction of the dock and acquire any land necessary therefor, that bonds might be issued payable as the council should designate, that all drafts on the dock funds should be approved by the council, and by section 3 that the council should invite proposals, and, upon completion, should prescribe the conditions and rentals upon which it should be used. *Held*, that the statute did not make the council a commission, free from the limitations of the charter, and hence that the mayor had power to veto its resolution for the city's purchase of property for the dock.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 229–236; Dec. Dig. § 107.*]

2. MUNICIPAL CORPORATIONS (§ 107*)—PROCEEDINGS OF COUNCIL—RESOLUTIONS—PASSAGE OVER MAYOR'S VETO.

The Dunkirk city charter provides that, on the mayor's veto of a resolution, he shall return it to the city clerk with his objections, who shall lay it before the council at the next meeting; that the council shall enter the objections on its journal, "and proceed to reconsider it"; and that if, after such reconsideration, four-fifths of the members elect "shall vote to pass it, it shall be of force notwithstanding the objections." The mayor vetoed a resolution, and returned it with his objections to the clerk, and at the next council meeting "the chairman stated that a vote would be given on the veto, members who favored sustaining the veto would vote 'yes' and those opposed to vote 'no.'" The vote was unanimously, "no." *Held* that, no vote having been taken on the passage of the resolution, the veto stood, and the resolution never took effect.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 229–236; Dec. Dig. § 107.*]

3. MUNICIPAL CORPORATIONS (§ 107*)—PROCEEDINGS OF COUNCIL—RESOLUTIONS.

The council of a city authorized to purchase land for a municipal dock, and which on January 15, 1911, had received an option on land for 30 days, on June 22, 1911, passed a resolution to purchase such land, which the mayor vetoed, and the mayor and council were afterwards enjoined from the purchase of any land for that purpose. *Held*, that as the option had expired, and as there was no contract to purchase the property

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under the corporation seal as required by charter, the resolution did not bind the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 229–236; Dec. Dig. § 107.*]

Action by Nellie R. Kimball against Harry James, Mayor, etc., of the City of Dunkirk, and others, to compel specific performance of a contract to purchase real property. Complaint dismissed.

Thomas P. Heffernan, for plaintiff.

Lyman A. Kilburn, Thomas J. Cummings, and Daniel Reed, for defendants.

BROWN, J. In May, 1910, the taxpayers of the city of Dunkirk, under authority of chapter 89 of the Laws of 1910, voted affirmatively upon the proposition, Shall the city of Dunkirk construct a public dock at a cost not exceeding $100,000? On January 13, 1911, the plaintiff submitted to the common council of such city, consisting of five members, a paper duly executed by her, wherein she agreed with the city to sell certain city lots extending to Lake Erie, known as the Kimball dock, for the sum of $10,000, in the event that the city would purchase the same within 30 days. On January 17, 1911, the common council passed a resolution providing that the city purchase of the plaintiff the property above referred to for the sum of $10,000. On January 20, 1911, the defendant mayor, in a communication to the common council, after stating his objections to their unanimous vote to buy the plaintiff's dock site, said:

"After due consideration I feel it my duty as mayor and do officially veto your action in reference to said dock proposition."

On February 7, 1911, at a meeting of the common council, "the chairman stated that a vote would be given on the veto, members who favored sustaining the veto would vote 'yes' and those opposed to vote 'no.' Noes, Stejakowski, Rosing, McCarthy, Schmatz, and Mehan. As a result of the vote the chairman declared the vote lost."

[1] It is important that it be determined from the foregoing facts whether the city of Dunkirk agreed to purchase the plaintiff's dock and to pay $10,000 therefor. The contention of the defendants is that under the charter of the city the resolution of January 17, 1911, became of no force or effect by reason of the mayor's veto on January 20, 1911. Section 33 of the city charter provides that:

"Every order, ordinance, resolution and act of the common council * * * shall be presented to the mayor before it shall be of force. If he approves it he shall sign it, but if not, he shall return it to the city clerk with his objections, who shall lay the same before the common council at the next meeting thereafter. The common council shall enter the objections upon its journal and proceed to reconsider it. If after such reconsideration four-fifths of all the members elected to the common council shall vote to pass it, it shall be of force, notwithstanding the objections of the mayor."

The contention of the plaintiff is that the mayor had no power to veto the action of the common council, and that his assumed veto is a nullity. By the statute authorizing the submission of the

question of building a municipal dock to the taxpayers it is provided:

"Sec. 2. If such proposition shall be adopted the common council of such city may provide for the construction of a public dock at such point on the water front thereof as the common council may determine, and to defray the cost of such construction and the acquisition of any necessary land or land under water required therefor, may cause bonds of the city to be issued in an amount not exceeding one hundred thousand dollars. Such bonds shall be issued for a term of not more than thirty years. * * * They shall be signed by the mayor * * * be payable at the office of the city treasurer * * * or at such other place as the common council thereof shall designate. The city treasurer before receiving any money on said bonds shall execute and file with the clerk of said city a good and sufficient bond in such an amount as fixed by the mayor and common council, to be approved by the mayor and common council. * * * The city treasurer, under the direction of the common council, shall invite sealed proposals for such bonds by public advertisement in such manner as the common council shall determine. * * * The moneys received from the sale of such bonds shall be placed by the city treasurer to the credit of a fund to be known as the public dock fund, and shall only be used for the purpose described by this act; and all drafts thereon shall be audited and approved by the common council.

"Sec. 3. The common council of such city shall invite sealed proposals for constructing said dock, and if said bids or proposals are satisfactory, shall let said contract to the lowest responsible bidder or may cause such work to be constructed by contract or otherwise as the common council shall determine, and upon the completion thereof shall prescribe the conditions under which it may be used by the public and shall adopt a schedule of rentals for the use thereof. * * * *"

The contention of the plaintiff that under the statute the mayor had no authority to veto the resolution of January 17th is based upon the theory that the statute made the common council a virtual commission, freed in the performance of its duty of any obligations of the charter of the city and that when the term "common council" is used in the statute it means the body of men constituting it, who shall act under the specified powers therein, without any reference to the charter or to the qualifications and limitations which it contains. It is not believed that the act of 1910 must be so construed. It is not believed that the acts of the common council specified in the statute cannot be deemed subject to the veto power of the mayor above quoted. To say that the common council arbitrarily can acquire lands for the dock, make contracts for its construction, determine the manner of letting the contract, audit and approve of drafts drawn upon the dock fund to the extent of $100,000, prescribe the conditions under which the dock may be used and adopt a schedule of rentals for the use thereof, all without any possible veto or restraint by the mayor under the charter veto powers, is a startling statement. The expenditure of $100,000 by the city of Dunkirk in the building of a municipal dock is an important matter, involving the disbursement of moneys greatly in excess of the annual budget. The mayor's veto power, as specified in the charter, extends to every item of appropriation or payment of money, and to say that the Legislature after having provided with particular care in the charter of the city for the conservation of every item of public funds has by the act of 1910 placed the disposition of this large sum of $100,000 be-

yond the protection of the mayor's veto, no matter how ill advised the acts of the common council may be, is too shocking for credence. To say that the powers of the common council, as defined in the act of 1910, must be executed as prescribed in the charter, is such a satisfactory solution of the problem and circumscribes its acts with such essential safeguards that such a conclusion seems to be irresistible. Such a construction of the act of 1910 and its relation to the charter of the city has been authorized by the Court of Appeals in People ex rel. Ennis v. Schroeder, 76 N. Y. 160, in which case it was held that the power of the mayor to veto every ordinance or resolution of the common council as provided by title 2, section 10, c. 863, Laws 1873, the charter of the city of Brooklyn, authorized the mayor to veto the appointment of the relator as clerk of a justice's court made by a justice of the peace with the consent of the common council under section 1, c. 337, Laws 1862, authorizing a justice of the peace to nominate and with the consent of the common council to appoint a clerk of a justice's court.

The decision in People v. Councilmen (Super. Buff.) 20 N. Y. Supp. 51, affirmed 135 N. Y. 660, 32 N. E. 648, that the mayor of Buffalo, under the power expressed in the charter to veto every ordinance and resolution of the common council, had no power to veto the action of the board of aldermen and board of councilmen when, in joint session under chapter 379 of Laws of 1892, it fixed the salary of a police commissioner, in no wise aids the plaintiff. In that case there was no authority in the charter or elsewhere for the veto of an act of a joint session of the two boards. The act of 1892 under which the joint session was held made the 25 aldermen and 9 councilmen one independent body of 34 men. It was not, when in joint session, a board of aldermen. It was not a board of councilmen. Neither was it the common council. The common council consisted of two separate bodies, one the board of aldermen, the other the board of councilmen, each acting separately. It was the acts of such common council that the mayor was authorized to veto. He was not authorized to veto an act of the common council in joint session.

The result is reached that the defendant mayor had power to veto the resolution of the common council of the city of Dunkirk, passed by it on January 17, 1911.

[2] It will be observed that it was provided by the charter above quoted that after a veto by the mayor the city clerk shall lay the same before the common council at the next meeting thereafter; that the common council shall enter the objections upon its journal and proceed to reconsider the resolution. If after such reconsideration four-fifths of all the members elected to the common council shall vote to pass it, the resolution shall be of force, notwithstanding the objections of the mayor. Such required proceeding was not had by the common council at its meeting of February 7, 1911, when the mayor's veto was presented. No consideration of the resolution was had. The council voted unanimously against sustaining the veto. No vote was had upon the question of passing the resolution. It was

not passed by a four-fifths or any other vote. The failure to reconsider and vote upon the passage of the resolution left the resolution to purchase the plaintiff's property in its vetoed condition. It could not, and did not, take effect. By reason of the facts hereinbefore enumerated the defendant city did not contract or agree to purchase plaintiff's dock site.

[3] On June 22, 1911, the common council duly passed a resolution declaring:

"That the common council do hereby reaffirm and adhere to their former action with reference to the purchase of the Kimball dock site * * * and does hereby declare its intention and does hereby purchase said Kimball dock site as per former propositions made to the board by the owners thereof."

On July 1, 1911, the defendant mayor filed with the city clerk a communication containing his objections to the resolution of June 22, 1911, and stating:

"I therefore unhesitatingly disapprove of your conduct in voting to buy the Kimball site and veto your action thereon."

On July 3, 1911, an action was commenced by a taxpayer of the city of Dunkirk against these defendants by service of a summons and other papers, together with a temporary injunction restraining the defendants from taking any steps looking toward the purchase by the city of the plaintiff's dock site until the further order of this court. That injunction order is still in force. The common council, being under restraint, took no steps to reconsider its vetoed resolution of June 22, 1911. This action was commenced in December, 1911, to compel a specific performance of the agreement to purchase plaintiff's property and to compel the payment of the sum of $10,000, and it is urged that the action of the common council on the 22d of June, 1911, was a reconsideration of the resolution of January 17, 1911, which had been vetoed by the mayor of the 20th of January, 1911, and a passage of such resolution over the mayor's veto. While it is true that the resolution of June 22, 1911, was passed by the unanimous vote of the common council, yet it was an act of that date, June 22d, at which time there was no contract in writing signed by the plaintiff agreeing to sell the dock site to the city. The proposition as made in writing by the plaintiff on the 13th of January, 1911, was to sell to the city within 30 days from that date. The plaintiff was not bound by any written agreement to sell on the 22d day of June, 1911. The city could not have compelled a sale on that date. The option the plaintiff made to the city to purchase expired in February, 1911. To say that the city became indebted unto the plaintiff on the 22d day of June, 1911, in the sum of $10,000 by the mere fact that on that day the common council agreed to purchase plaintiff's property when there was no agreement in force on the part of the plaintiff to sell is simply saying that a promise to pay money can be supported and enforced without any consideration therefor. Attention has been called to no authority for the assertion that an expired option, unenforceable in the hands of a prospective vendee, of no validity as against an unwilling vendor, can be the basis of an essential consideration to

uphold a promise by a vendee to pay the purchase price named in the expired option. The action of the common council on June 22, 1911, did not bind the city to purchase the plaintiff's dock site.

It is provided by section 30 of the charter of the city:

"All leases, contracts, licenses, appointments to office, and other papers to be executed as the act of the city, or as the act of the mayor, when so authorized by the common council or by this act, shall be under the corporate seal, and signed by the mayor or presiding officer and city clerk."

There was no contract to purchase plaintiff's real estate executed as required by this provision, and the conclusion is reached that the plaintiff has no contract with the city of Dunkirk whereby the city has agreed to pay her the sum of $10,000 for the public dock site. There is no contract that can be specifically enforced against the city.

Plaintiff's complaint must be dismissed.