### LICHTIG *v.* SAGINAW CIRCUIT JUDGE.

1. PUBLIC OFFICERS—SCHOOLS—PRESIDENT OF SCHOOL BOARD—ELEC-TION OR APPOINTMENT.

Where the president of the Bay City school board vetoed the resolution of the board by which it was attempted to remove him from office and appoint a successor, and it appeared that the president had been duly elected and

had exercised the veto power conferred upon him by Act No. 514, Local Acts 1903, the board failing to pass the resolution over the veto, such attempted removal and election to the presidency of the board was ineffective and the first elected president remained entitled to the office.

2. SAME — EDUCATION, BOARD OF — LEGISLATIVE OR ADMINISTRATIVE ACTION.

The provisions of the above mentioned act that "the president or vice president when acting as president may file with the clerk of the board his objections in writing to any by-law, ordinance, resolution, motion or order of the board within five days," etc., conferred the power upon such presiding officer to veto any action, legislative or administrative, of the board.

3. SAME—MANDAMUS—PRESIDENT OF SCHOOL BOARD.

While it is contrary to the practice of the Supreme Court to determine the right to hold office in a mandamus proceeding, an exception is made in this instance because of the pressing nature of the business before the board, and the fact that the president was entitled to the office both *de facto* and *de jure*.

Mandamus by Edward Lichtig against William G. Gage, Saginaw circuit judge, to compel the respondent to vacate an order dissolving an injunction in a suit brought by relator to restrain one J. W. Coles from exercising the office of president of the school board of the city of Bay City. Submitted April 28, 1914. (Calendar No. 26,216.) Writ granted June 1, 1914.

*Joslyn & Houghton (Kinnane & Lane* and *Charles Hitchcock,* of counsel), for relator.

*L. G. Beckwith* and *Stoddard & McMillan,* for respondent.

BIRD, J. The board of education of Bay City consists of nine members, who were all elected in October, 1912, for a term of two years. At their first meeting they elected relator president of the board. At the beginning of the present year, they fell into serious disagreement over a resolution to re-employ

their present superintendent, and, at a meeting held on the 13th day of February, the following resolution was offered by Trustee Ribble:

"Whereas, the interests of education, the good government and prosperity of the schools of Bay City, and the welfare of the public concerning the same, require the election of a new president of this board, therefore resolved, that the said office of president be and the same is hereby declared vacant and that trustee J. W. Coles be and he is hereby elected president of this board."

The resolution was declared out of order by the president, and neither he nor the clerk would put it to a vote. Trustee Ribble then proceeded to call the roll himself, but, before it was concluded, a motion to adjourn was declared carried by the president, whereupon four members left the meeting. The other five remained until the roll call was finished, after which Trustee Coles took the chair and declared the resolution adopted. Thereafter both Lichtig and Coles claimed to be president of the board. On March 14th the relator Lichtig applied to and secured a temporary injunction from the circuit court in chancery, addressed to Coles, inhibiting him from attempting to exercise the duties of president and from interfering with the relator in the discharge of his duties as president. An answer was filed to the bill of complaint, and a motion to dissolve followed, which was granted by the trial court. We are now asked for a writ of mandamus to compel the circuit judge to set aside his order dissolving the injunction. The principal questions raised are:

(1) Had the board the power to remove the president?

(2) If they had such power, were the proceedings taken effective to accomplish that end?

Inasmuch as a solution of the second question will

determine the case, we will refrain from discussing the first question.

2. The board of education at Bay City was created by Act No. 514 of the Local Acts of 1903. That act provides that at the first meeting after the members are elected in October, they shall elect a president and vice president. Section 256 of the act confers on the president the veto power in the following language:

"The president, or vice president, when acting as president, may file with the clerk of the board his objections in writing, to any by-law, ordinance, resolution, motion or order of the board within five days after the passage or adoption of the same, setting forth reasons for his disapproval thereof, and in such case such by-law, ordinance, resolution, motion or order shall not become operative or take effect unless again passed or adopted by a two-thirds vote of all the members elect."

Within the five days allowed by this section, the relator, as president, exercised the power therein conferred, and vetoed the resolution. The parties are in direct conflict as to the force of the veto. The respondent insists that the veto power conferred by this act is effective only against legislative acts, and that the appointment to office is not a legislative act, but an administrative one. The question as to whether the veto power extends to administrative as well as legislative acts is one which must, in the last analysis, be decided from the language of the act conferring it. 28 Cyc. p. 356. It will be noted that the language of this act is very broad, and appears to confer the power upon the president to veto any act, legislative or administrative, that does not meet with his approval. Had the legislature intended he should have this power, it is difficult to conceive how it could have been more aptly expressed than by the use of the terms which were employed. There is no official action (at least of any consequence) which the board could

transact, which would not involve, in making it effective, one of the enumerated forms.

In the case of *People* v. *Schroeder*, 76 N. Y. 160, this question was before the court of appeals upon a legislative act, which provided:

"That every ordinance or resolution of the board of aldermen shall, before it takes effect, be presented and certified to the mayor, and, if he approves of it, he shall sign it and, if not, shall return it with his objections, when it may be passed by a vote of two-thirds of the members."

The court, in passing upon the question, said in part:

"The resolution of the common council confirming the appointment of the relator, which was transmitted to the mayor, and which he returned without his approval, comes directly within the terms of the provision last cited; and it follows that without such approval, the relator failed to receive a legal appointment as clerk. The object of the provision evidently was to give the mayor the power to veto all acts of the common council which did not meet his approval, and in this form to restrict improvident action by that body. It is no answer to this construction, I think, to say that the act of the common council was neither a legislative act, nor an ordinance, nor a resolution, because it was an act confirming an appointment, for its confirmation was not only in the form of a resolution, but that body had no authority to make the appointment valid without the approval of the mayor."

A similar question arose in *Baar* v. *Kirby*, 118 Mich. 392 (76 N. W. 754), over the veto by the mayor of the resolution of the council, transferring certain moneys from one fund to another. The power to veto was that conferred on mayors of fourth-class cities, and provided that:

"No ordinance or resolution passed by the council shall have any force or effect if, on the day of its passage, or on the next day thereafter, the mayor, or other officer or person legally discharging the duties

of mayor, shall lodge in the office of the clerk a notice in writing suspending the immediate operation of such ordinance or resolution.    *    *    * ''

The same point was made in that case as is made in this that it was an administrative act, but the court held that the veto power extended to and covered the case. It was therein said:

"The claim that it was not a resolution which, under the statute, the mayor had the power to veto has no force. The statute provides that no ordinance or resolution passed by the council shall have any force or effect if the notice is given, and such ordinance or resolution shall not go into effect when the veto message is interposed within the time prescribed, unless the same is passed over the veto by a two-thirds vote of all the aldermen-elect."

We are cited to three cases in which a contrary holding is made: *Erwin* v. *Jersey City,* 60 N. J. Law, 141 (37 Atl. 732, 64 Am. St. Rep. 584) ; *State, ex rel. Haight,* v. *Love,* 39 N. J. Law, 14; *State* v. *Wagner,* 170 Ind. 144 (82 N. E. 466, 15 Am. & Eng. Ann. Cas. 1063). It will be found, upon examination of these cases, that the language of the several acts conferring the veto power differ materially from the one in question. In the first case cited, the mayor was given authority to veto the acts of any board of the city. In the second case, the mayor was given the power to veto the action of any municipal board. In the last case cited, the mayor was given the power to veto any ordinance, order or resolution of the council. There is no language in the act under consideration which would justify us in restricting its operation to legislative acts. To hold that it covers all acts involving the exercise of any discretion of the board will lead to no absurd results. To so hold would say in effect to the board: If you have the power of removal, it must be exercised by a two-thirds vote, if the resolution adopted by a majority vote is vetoed. This would

furnish a reasonable check in such cases on hasty action, and at the same time would not deprive the board from exercising the power. We are therefore of the opinion that the resolution of the board, which removed the president and substituted another in his stead was of no force after the veto was filed.

It is contrary to the practice of this court to determine the right to an office in a mandamus proceeding, but by reason of the pressing nature of the matters now before the board, and the further fact that the record fairly shows that the relator is both president *de jure* and *de facto,* we make an exception to the rule. *Lawrence* v. *Hanley,* 84 Mich. 399 (47 N. W. 753).

If there appears to be any necessity for the issuance of the writ after claimant Coles is advised of the action of this court, the writ will issue as prayed.

McAlvay, C. J., and Brooke, Kuhn, Stone, Ostrander, Moore, and Steere, JJ., concurred.