J. EHRLICH REALTY Co., a corporation existing under the Laws of the State of Delaware,
Plaintiff,

vs.

THE CITY OF DOVER, a municipal corporation of the State of Delaware, and GILBERT PRESTON WARD, Collector of Taxes of the City of Dover,
Defendants.

*Kent, July 23, 1956.*

*William G. Bush, III,* of Hope & Harmonson, Dover, for plaintiff.

*James H. Hughes, III,* Dover, for defendants.

SEITZ, Chancellor: Plaintiff is the owner of certain real estate located in the City of Dover and brings this action challenging the legality of the 1956 assessment of real estate taxes. It requests an injunction restraining the City and its tax collector from collecting taxes from plaintiff based on that increased assessment.

Both the plaintiff and defendants have moved for summary judgment and this is the decision thereon. The governing charter will be referred to either as the "charter" or "statute".

Plaintiff makes the following contentions:

(1) There was no tax assessor at the time the assessment was purportedly made. The purported assessor, Thomas E. Baker was not even a valid de facto tax assessor, but a mere intruder;

(2) Although charged by law to do so, the purported tax assessor did not make the assessment. Rather, it was made either by an outsider or by Council;

(3) Plaintiff was denied its legally provided opportunity to be heard on its appeal concerning the assessment on its properties.

Before considering plaintiff's contentions let us resolve defendants' argument that plaintiff has failed to state a claim. Clearly the court has jurisdiction here if plaintiff was deprived of its substantial rights. We are not here dealing with the question of fairness of the plaintiff's assessment; and indeed could not. See *Brennan v. Black,* 34 *Del.* 380, 104 *A.2d* 777. There is no merit to defendants' contention that plaintiff has failed to state a claim. I say this because plaintiff charges a violation of its substantial rights.

Let us first consider plaintiff's claim that there was no tax assessor at the time the 1956 assessment was purportedly adopted; from which plaintiff concludes that there could be no valid assessment.

Thomas E. Baker was first elected assessor for the City of Dover in 1941 and took the oath at that time. He has been re-elected by the Council each year since. His latest election took place on January 9, 1956, although the City Charter called for his election at the December meeting, 47 *Laws of Delaware, Chap.* 314, § 2. He was sworn in April 12, 1956, after he had performed nearly all of his services in connection with the new appraisal for 1956. He did not realize the oath was required at the beginning of each term.

▉ Before considering the specific grounds relied upon by plaintiff to show that Mr. Baker was not even a *de facto* assessor, I note the well-established law that many legal provisions in this field are directory rather than mandatory. A provision is mandatory only when it is of substance and obviously for the protection of the substantial rights of the taxpayer. Against this background, let us consider plaintiff's specific contentions.

▉ Plaintiff first points out that, despite the statutory requirement, the assessor was not elected at the December meeting of Council, but was elected in January of this year. I hardly need say that the Legislature by this provision could not have intended that there should be no tax assessor for the City of Dover in the event the Council did not act at the time fixed. This statutory provision was at most only part of a scheme to establish some reasonable time sequence in connection with real estate taxation in the City of Dover. Failure to elect Mr. Baker at the December meeting could not possibly injure the plaintiff or the other taxpayers. I conclude that this provision of the charter is directory and thus when Council elected Mr. Baker at its January meeting, his election was valid.

▉ Plaintiff next shows that the assessor did not take the required oath until after he had performed most of his duties as assessor for the current year. Clearly Mr. Baker purported to discharge the

duties of assessor, a legally created position in the government of the City of Dover. Once again, it is quite evident that the taxpayers can show no prejudice by the fact that Mr. Baker, through inadvertence, failed to take his oath until he had performed many of his duties. Plaintiff's attack on this ground is without merit. See 3 *Cooley, Taxation,* (*4th Ed.*) § 1049.

Finally, under his first point, the plaintiff contends that the motion, pursuant to which Mr. Baker was elected the assessor by the Council, was not approved in writing by the Mayor. Plaintiff contends that this action of Council was subject to the following provision of 36 *Laws of Delaware, Chap.* 158, § 10:

> "No ordinance, resolution, or order shall be valid unless it shall have (1) the affirmative vote of a majority of the members elected to the Council, and (2) the written approval of the Mayor * * * , provided that in the absence of such approval by the Mayor * * * Council may, * * * pass or adopt the same ordinance, resolution or order which did not receive the approval of the Mayor * * * by the affirmative vote of three-fourths of the members elected to the Council."

The quoted provisions of the charter require approval or disapproval by the Mayor as a prerequisite to valid Council action in the areas noted. This being so, let us consider whether the Council's action in electing a tax assessor under the provisions of 47 *Laws of Delaware, Chap.* 314, constituted the passage of an "ordinance, resolution, or order" which, to be valid, had to be approved by the Mayor, or absent such approval by three-fourths of the Council. Clearly the action of Council in electing the assessor by motion was not the passage of an ordinance. While not quite so clear, it might also be said that technically, since the appointment was by motion, it was not a "resolution" or "order" and thus not covered by the quoted charter provisions. However, I believe the substance of the matter rather than the form by which the Council appointed the assessor must be considered. Otherwise, obvious evasion of the legislative intent would be possible.

■ Viewing substance rather than form, I do not believe that the provision for the Mayor's approval or disapproval was intended to cover this appointment. The reasoning behind my conclusion is found in the case of *State ex rel. Walker v. Wagner*, 170 *Ind.* 144, 82 *N.E.* 466. There the court was confronted with a case where the City Council had passed a "resolution" appointing a councilman to fill the vacancy in that office. The Mayor vetoed the resolution, relying upon a statute which provided that "no ordinance, order or resolution of the council shall become law, or operative until it has been * * * approved in writing by the mayor, or passed over his veto * * *." *Burns' Ann.St.Supp.Ind.* 1905, § 3476. The Supreme Court of Indiana held that the action of the Council was not covered by the provisions of the quoted statute even though the Council had taken its action by "resolution"—a stronger case than the present. The Indiana Court looked to the substance rather than the form of Council's action and concluded that by the statute:

> "* * * the Legislature intended to confer upon the mayor the power to veto, not appointments to office, but such acts of the common council as usually, in such bodies, take the form of resolution, order, or ordinance. While the appointment to office is not a legislative function, yet the power to name the persons or body who shall make the appointment is legislative."

Later in the opinion the court said:

> "It will be found from an examination of the authorities cited in this opinion that it has been uniformly held that the Legislature may vest the power of appointment to office in the department of the government of cities or town which is authorized to exercise legislative power, as the authority granted to the common council to fill vacancies in the office of councilman is in its nature executive, and the mayor's power to veto does not apply to such appointments."

The court supported its conclusion by a review of other cases which amply justified the result reached.

■ I conclude that the statutory provision requiring action by the Mayor of Dover was intended to apply to Council actions usually

taking the form of resolutions, orders and ordinances and dealing with subject matter traditionally related to the so-called "legislative" function of Council. Certainly it was not intended that the charter provision require action by the Mayor on all motions and actions of the Council.

The election of the assessor by the Council was the exercise of an essentially "executive" function granted the Council by the statute. I do not believe that the Council in making the appointment by way of an election was taking action of the type which required action by the Mayor.

I conclude that because of the "formal" nature of the irregularities connected with Mr. Baker's selection and qualification as assessor, the purported assessment made by him is not invalid. In view of my conclusion it is unnecessary to consider whether, in any event, he should be considered as a valid holding-over assessor.

■ I next consider plaintiff's contention that the assessor, though charged by statute with the legal duty to make the assessment, did not do so. Council had authorized the Mayor to execute a contract employing the Clemenshaw and Company firm to assist the assessor in making a new assessment. This was done. The undisputed facts show that Mr. Baker participated with the professional appraisal firm of Clemenshaw and Company in making a complete valuation of the taxable real estate in the City of Dover. I think it clear that although of necessity the Clemenshaw Company did most of the work, the assessor reviewed their work and the ultimate decision as to valuation was approved by the assessor. I believe the relationship of the Clemenshaw Company to the assessor was the same as that which existed between that firm and the assessing body and was approved by the Supreme Court of Delaware in the case of *Brennan v. Black,* above. The assessment is therefore not invalid as being made by Clemenshaw and Company. The substance of what took place rather than the casual use of words in the resolutions of Council and the reports of the assessor must control here.

I next consider plaintiff's charge that the assessment was made by Council rather than by the assessor, as the law provides.

It is clear that Baker first found the appraised value of all taxable properties in Dover and submitted his valuations to the Council. The Council then "directed" Baker to assess the taxable properties at 60% of the appraised value. The assessor revised the appraised values downward at a uniform rate of 40% and the resultant figures became the assessed valuations that were placed in the assessment lists. Later, on April 16, the appraiser publicly "ratified and confirmed the assessment previously made by him" and so announced at a meeting of Council on April 16, 1956.

What is the legal effect of the foregoing facts? It is here assumed that the assessor properly arrived at the appraised value of the taxable properties. However, it is clear that Council's "direction" to the assessor and his acceptance of that direction (inferentially, without exercising independent judgment) to assess the taxable properties at 60% of the appraised values reached by him was contrary to the statute. The statute provides that "The said valuation and assessment shall be made by an assessor or assessors who shall be elected by the Council * * *." 47 *Laws of Del. Chap.* 314. Under the quoted language of the statute the assessor alone was authorized to make the assessment and it could not be made in any part by Council. Compare *Boyd v. Dillman*, 9 *W.W.Harr.* 231, 197 *A.* 830; 16 *McQuillan, Municipal Corporations* (3rd Ed.) § 44.102. It was therefore improper for the assessor to accept the direction of Council in fixing the assessments.

The next question which arises from my conclusion is whether plaintiff or any other taxpayer was prejudiced because the appraiser improperly followed Council's direction in fixing the assessment. Admittedly, the appraised values were uniformly reduced. As our Supreme Court said in *Brennan v. Black* [104 *A.2d* 795], above, in considering the situation where there had been a uniform percentage-wise reduction in the process of determining the assessed value,

> "* * * plaintiff can make nothing of the reduction. Since the figure applied to all taxpayers alike, its use wrought no injustice and is quite immaterial to the present point."

As plaintiff's counsel correctly points out, there is a factual distinction between this case and the *Brennan* case in that here the assessor made the uniform reduction at the direction of Council whereas in the *Brennan* case it was made by the assessing body itself. But despite this distinction the question remains as to whether plaintiff was prejudiced by the action of the assessor in following the illegal direction of Council.

The assessment here is contrary to law only to the extent that it incorporates a uniform percentage-wise reduction made by the assessor at the improper direction of Council. No question of the fairness of the appraised values reached by the assessor and uniformly reduced is now involved. As noted in the *Brennan* case, other factors aside, this is not the type of illegality or injustice which prejudices the taxpayer and so is not grounds for relief.

I conclude that although the assessment incorporated the result of an illegal direction by Council, plaintiff is not prejudiced thereby and is therefore not entitled to the type of relief sought in this action. Had the reduction not been uniformly applied after the assessor had valued all the properties a far different problem would have been presented. In view of my conclusion I am not called upon to consider the effect of the assessor's so-called ratification.

I next consider plaintiff's contention that it was denied the legally provided opportunity to be heard on an appeal from the assessment. The pertinent portion of the charter provides:

"The assessment shall be set down by the assessor or assessors in two or more copies as the Council shall direct, and shall be delivered to the Council as soon as made. The real property and personal property of the assessors shall be assessed by the Council. The Council shall, prior to the fifteenth day of March in the year 1950 and prior to the fifteenth day of March in each year thereafter cause a copy of the general assessment to be hung up in two public places in the City, there to remain for the space of ten days for public information. With the copies of the general assessment hung up as aforesaid, shall be a notice of the day, hour and place that the Council will sit as a Board

of Revision and Appeal. Notice of the hanging up of the copies of the assessment, and of the day, hour and place when the Council will sit as a Board of Revision and Appeal shall be published in at least one issue of the newspaper published in said City. On the day and at the time and place designated in the notice aforesaid, the Council shall sit as a Board of Revision and Appeal to correct and revise the assessment hung up as aforesaid and to hear appeals concerning the same. They shall have full power and authority to alter, add to, deduct, and take from the said assessment. The decision of a majority of the Council sitting shall be final and conclusive.

"No Councilman shall sit on his own appeal.

"The assessment as revised and adjusted by the Council as aforesaid shall be the basis for the levy and collection of taxes for the city."

On approximately March 19 (four days beyond the charter deadline),[1] the assessment list was "hung up" in two public places and presumably remained for at least ten days. In the front of the two assessment lists there were notices that a Board of Revision and Appeal was to sit on March 27, April 3, and April 9. This notice also appeared in the local paper.[2]

The Board of Revision and Appeal, which sat on the three dates noticed, was composed of a committee of some but not all members of Council. They were appointed by the Mayor. At these hearings, the method of making the appraisals was pointed out and information was secured on each complaint. The complainants were also told they might have a few minutes later before the full Board. However, this procedure did not contemplate a full rehearing by the Board.

1. This tardiness was not attacked by plaintiff in its brief or at oral argument and will therefore not be considered.

2. While the charter provision does not say when, in relation to hearings by the Board, the two notices were to be posted and the one publication made, I believe it reasonable to conclude that the hearings should be at least ten days after the two notices are hung up.

The committee was to report back to Council the information secured at these hearings. These hearings were closed to the public and were not attended by the City Clerk.

Let us here consider plaintiff's contention that the action of the Board of Revision and Appeal in taking testimony through a committee of the Board was contrary to the charter. Despite its long usage, I conclude as did Council that its procedure was not in compliance with the charter. I find it necessary to decide this point because defendants' counsel relies upon it. The language of the charter provides that:

> "With copies of the general assessment hung up as aforesaid, shall be a notice of the day, hour and place that the Council will sit as a Board of Revision and Appeal. On the day and at the time and place designated in the notice aforesaid, the Council shall sit as a Board of Revision and Appeal to correct and revise the assessment hung up as aforesaid and to hear appeals concerning the case."

Thus, under the charter, Council was to sit and hear complaints on the days specified for the hearings. This would seem to preclude the right of Council to take evidence concerning appeals through a committee of Council. I emphasize that we do not have here a charter provision which merely directs Council to make corrections and revisions.

As I interpret the charter, when a taxpayer desires to appeal he is entitled to have his appeal heard as well as determined by the Board. I therefore agree with plaintiff that the appeal hearings of March 27, April 3, and April 9 did not comply with the charter because they were conducted by a committee of the Board.[3]

But defendants say that a later hearing by the full Board rectified this deficiency in the proceedings. The facts show that Jacob Ehrlich, president of plaintiff company appeared before the committee of the

3. In view of my conclusion I need not decide plaintiff's contention that the committee meetings were invalid because not open to the public.

Board on April 9, the last of the three noticed sittings of the Board, and demanded that his appeal be heard by the full Board. He was informed by the committee that a taxpayer desiring to appeal his assessment must present his facts to the committee, since the taxpayer would not have an opportunity to present his case all over again to the full membership of the Board. However, the Council decided, apparently later in the same evening (April 9), that the committee procedure was not in strict compliance with the provisions of the City Charter. It therefore decided to set a new date to sit as a full Board of Revision and Appeal. Defendants' papers show that it was announced at the meeting through the Mayor that the full Council would sit as a Board of Revision and Appeal on April 16. Plaintiff's papers show that Jacob Ehrlich was present for a time at the April 9 meeting, but he denies that he heard the Mayor's announcement. As hereinafter shown, I do not believe this dispute needs to be resolved by trial since it is immaterial in view of my conclusion.

On April 10, a notice appeared in the Dover paper that a Board of Revision and Appeal meeting would be held on April 16. I assume that this complied with the newspaper publication requirement of the charter. However, no notice of this hearing was posted with the assessment lists as is required by the charter.

On the evening of April 16, the Mayor presided at the meeting of Council sitting as a Board of Revision and Appeal. The Board, after hearing certain appeals, continued its session until April 23, 1956. Full membership of Council was present on April 16 and April 23 and the pertinent information on each appeal was presented by each appellant despite the earlier orally announced intention to limit the proof to matters not presented to the committee. Although plaintiff was not present (from which I infer that plaintiff did not present its case) the Council nevertheless considered the assessment of plaintiff's properties and decided by majority vote that no revision should be made.

Plaintiff contends that the foregoing facts show that it was denied its appeal rights for several reasons. Preliminarily, defendants do not deny and indeed cannot deny that the notice provisions, being

primarily for the benefit of the taxpayers, are mandatory at least in their substantial features. See 2 *Cooley, Taxation* (*4th Ed.*) § 511; *Board of Com'rs of Marion County v. Western Electric Co.,* 198 *Ind.* 417, 153 *N.E.* 177; 84 *C.J.S., Taxation,* § 420.

I first consider plaintiff's claim that the meeting of the full Board of Revision and Appeal on April 16 was not noticed as required by the charter and so did not afford plaintiff its legally provided opportunity to have its appeal heard by the entire Board.

As heretofore noted the charter required that notice of the time, day and place for the hearing of appeals by the Board of Revision and Appeal was to be hung up with the assessment list in two public places for ten days. It was also to be published at least once in the local newspaper. While notice of the April 16 meeting of the Board was published in the local newspaper, no notice was hung up with the assessment lists. Indeed, the record is silent as to whether the lists were still up.

I conclude that the April 16 meeting of the entire Board to hear appeals in connection with the 1956 assessment was not noticed in accordance with the mandatory requirements of the charter.

But defendants contend that plaintiff, through its president, had actual knowledge of the meeting of the full Board on April 16 and should therefore be held to have waived the legal notice. Since we are here dealing with mandatory notice provisions of the charter, the defendant must show compliance with such provisions and a mere showing that the plaintiff taxpayer had actual knowledge of the meeting is insufficient. Compare 2 *Cooley, Taxation* (*4th Ed.*) § 511; *Weyerhaeuser Timber Co. v. Pierce County,* 133 *Wash.* 355, 233 *P.* 922; *Ward v. Wentz,* 130 *Ky.* 705, 113 *S.W.* 892. Thus the disputed fact as to whether plaintiff had actual knowledge of the April 16 meeting is not material and need not be resolved. Nor need I decide whether the oral announcement was adequate in view of the fact that it may have imposed an invalid limitation on the evidence which could be presented. Before there can be a waiver by a taxpayer he must have presented the merits of his claim at the im-

properly noticed meeting or engaged in other conduct of equally strong import. Compare 24 *A.L.R.* at pages 373-374; 84 *A.L.R.* at pages 207-208.

Plaintiff did not participate at the April 16 or April 23 meeting of the Board and so no waiver can be inferred.

 Defendants also contend that plaintiff is guilty of laches. Plaintiff commenced this action May 15. I cannot find either unreasonable delay on plaintiff's part or prejudicial change of position on defendants' part. After all, the Board recognized the validity of plaintiff's contention that the full Board had to hear appeals. Yet in noticing the meeting they failed to comply with the notice provisions set forth in the charter. I conclude that plaintiff is not barred by laches. In any event, this defense could not be decided in defendants' favor on the present motions because it would certainly require the court to determine that plaintiff had actual notice of the meeting—a disputed fact.

I conclude that because Council failed to comply with the mandatory charter provisions for notice in connection with assessment appeals, the plaintiff is entitled to a permanent injunction restraining the defendants from attempting to collect real estate taxes on plaintiff's properties on the basis of the purported 1956 assessment.

Defendants' motion for summary judgment will therefore be denied and plaintiff's motion for summary judgment will be granted.

Order on notice.