Champer *v.* The City of Greencastle.

writ of mandate herein, and for further proceedings not inconsistent with this opinion.

Filed June 20, 1894.

---

No. 16,977.

## CHAMPER *v.* CITY OF GREENCASTLE.

MUNICIPAL CORPORATION.—*Powers of.*—Municipal corporations have such powers only as are conferred upon them by the act of the Legislature creating them, and such incidental powers as are implied by their creation, and as are essential for the accomplishment of the purposes of their creation, and for their continued existence.

SAME.—*City Ordinance, when Subject to the Objection of Unreasonableness.*—A city ordinance passed under such implied power, or under a general grant of power, is not valid unless it is reasonable and within the power conferred, either by express statute or by necessary implication.

SAME.—*City Ordinance.*—*To Regulate Places Where Intoxicating Liquors are Sold.*—*When Reasonableness of Ordinance may be Inquired Into.*—The power conferred upon municipal corporations (R. S. 1881, section 3154) "to regulate all places where intoxicating liquors are sold to be used on the premises" (R. S. 1881, sections 3106, subd. 13), is a general grant of power, and a city ordinance passed under such general authority is open to the inquiry whether its passage is a reasonable exercise of the power conferred by statute.

SAME.—*City Ordinance Regulating Places Where Intoxicating Liquors are Sold.*—*When Unreasonable and Invalid.*—A city ordinance forbidding the erection or maintenance of door screens, window blinds, or stained, ground, colored or darkened glass to the doors, windows or openings of any saloon, shop or other place where intoxicating liquors are sold to be used on the premises; or the erection, maintenance of any obstruction of any kind whatever, of such doors, windows or openings, that will obscure or prevent a full view of the interior of such saloon, etc., and providing that the ordinance shall not be so construed as to prevent saloon keepers and others mentioned from having the usual and ordinary shutters to their doors, is unreasonable and invalid.

From the Putnam Circuit Court.

*C. C. Matson* and *P. O. Colliver*, for appellant.

*T. T. Moore*, for appellee.

| 138 | 339 |
| 135 | 467 |
| 138 | 339 |
| 140 | 478 |
| 142 | 191 |
| 138 | 339 |
| 146 | 70 |
| 146 | 422 |
| 138 | 339 |
| 148 | 23 |
| 138 | 339 |
| 155 | 130 |
| 138 | 339 |
| 162 | 46 |
| 138 | 339 |
| 164 | 74 |
| 138 | 339 |
| 168 | 289 |
| 138 | 339 |
| 170 | 159 |

McCabe, C. J.—This was a suit by the appellee against the appellant, begun in the mayor's court of said city, to recover the penalty provided for the violation of an ordinance of said city. Appellee recovered judgment, from which appellant appealed to the circuit court, where appellant's demurrer to the complaint, for want of sufficient facts, and his motion to dismiss the cause, were both overruled, after which appellee again recovered judgment. Appellant assigns for error these rulings of the trial court, and that the complaint does not state facts sufficient.

The whole question, thus raised, turns upon the validity of an ordinance of said city, which reads as follows: "An ordinance to provide for the removal of all saloon screens and window blinds, and providing penalty for the violation of such ordinance. Whereas it is claimed that there have been frequent violations of the liquor law in the city of Greencastle, Indiana, by the saloon keepers of said city in selling intoxicating liquors to minors and intoxicated persons, and also in allowing minors to congregate in such saloons around the pool table and billiard tables kept therein; and whereas, it has been found difficult, if not impossible, to obtain the evidence necessary to secure a conviction for such violations of law, owing to the blinds and screens erected and maintained by such saloon keepers to the doors and windows of such saloons, so as to obscure and prevent a view of the interior thereof; therefore, for the better policing of said city, and the more perfect enforcement of law, be it ordained by the common council of the city of Greencastle, Indiana, that it shall be and is hereby made unlawful for any person or persons who own, operate or run any saloon, shop, or other place where intoxicating liquors are sold to be used in and upon the premises within said city of Greencastle, Indiana, or within two miles beyond

the corporate limits of said city, to put up, erect or maintain any door screens, window blinds, or stained, ground, colored or darkened glass of any kind to any of the doors, windows or openings of such saloon, shop or other place where intoxicating liquors are sold to be used in and upon the premises, or to put up, erect or maintain any obstruction of any kind whatever, to any of such doors, windows or openings, that will in anyway obscure or prevent a full view of the interior of such saloon, shop or place aforesaid, but all such screens, blinds and stained, ground, darkened or colored glass, and all other obstructions aforesaid to the doors, windows and openings of such saloon, shops and places where intoxicating liquors are sold as aforesaid, shall be taken down and removed, so as to give a full and unobstructed view of the interior of such places at all times: *Provided* that nothing herein contained shall be so construed as to prevent said saloon keepers and persons aforesaid from having the usual and ordinary shutters to said doors. Any person violating any of the provisions of this ordinance shall, upon conviction before the mayor of said city, be fined in any sum not less than ten dollars nor more than one hundred dollars for each offense, and each day that such obstruction shall be put up, erected, maintained, or remain in place, shall constitute a separate and distinct offense. This ordinance shall be in force and take effect from and after its passage and publication.''

It is contended on behalf of the appellant, that this ordinance is void because it is unreasonable, oppressive, and is in violation of the constitution, because it invades the rights of private property.

The validity of the ordinance depends upon the answer to the question: Had the municipal corporation of Greencastle the power to pass the ordinance? Mu-

nicipal corporations have such powers only as are conferred upon them by the act of the Legislature creating them, and such incidental powers as are implied by their creation and as are essential for the accomplishment of the purposes of their creation and for their continued existence. *City of Lafayette* v. *Cox*, 5 Ind. 38; *Kyle* v. *Malin*, 8 Ind. 34.

All acts of such corporations not strictly within these limits are void. Their acts can not be declared void by the courts because of any supposed conflict between them and the constitution so long as their acts are authorized by the Legislature, and the act of the Legislature is not in conflict with the constitution.

It is well settled that the creation of a municipal corporation carries with it the implication that such corporation is empowered to pass such ordinances and by-laws as may be needful for its well being. 1 Dill. (4th ed.) Munic. Corp., sections 315 and 316, and authorities there cited.

It is also well settled law that where an ordinance is passed by such municipality under no other authority than such implied power, the ordinance to be valid must be reasonable; and if it is unreasonable it will be void. 1 Dill. (4th ed.) Munic. Corp., section 319, and authorities cited.

The first question, therefore, that confronts us is whether the passage of the ordinance was a reasonable exercise of the power conferred upon the corporation, and, therefore, whether the corporation had the power to pass it or not. It is to be regretted that counsel on neither side have furnished us with such a discussion of the question as its great importance seems to demand, as it is one of first impression in this court. Therefore, we have gone far beyond the briefs in our investigation, in order to reach a correct solution of the question. At the

threshold of this discussion we are met with the suggestion that this court has held in two cases that no inquiry can be made into the reasonableness of the ordinance when the Legislature has enacted anything upon the subject, and hence it is suggested that in such a case the Legislatuse has delegated to cities the power to exercise a discretion in such matters, and, therefore, in such case the courts can not review that discretion.

The first of the cases referred to is *A Coal-Float* v. *City of Jeffersonville*, 112 Ind. 15, where it .was said: "The power of a court to declare an ordinance unreasonable, and therefore void, is practically restricted to cases in which the Legislature has enacted nothing on the subject-matter of the ordinance, and, consequently, to cases in which the ordinance was passed under the supposed incidental power of the corporation merely," and refers to sections 319 and 328, 1 Dill. (4th ed.) Munic. Corp., as authority for that statement. If the quotation is to be construed as meaning that no inquiry in such a case can be made into the question whether the ordinance was a reasonable exercise of the power conferred, then the language is too broad; if, however, it is to be construed to mean that no inquiry can be made as to whether the ordinance is reasonable or not where the power to pass it has been conferred, then it is correct. We think the latter is the proper construction to be placed on the language employed.

Section 328, of Dillon, *supra*, is the one that relates more directly to the point involved in the above quotation. It reads as follows: "Where the *Legislature*, in terms, *confers upon a municipal corporation the power to pass ordinances of a specified and defined character*, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto can not be impeached as invalid because it would have been re-

garded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the Legislature distinctly says may be done can not be set aside by the courts because they may deem it to be unreasonable or against sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid."

This is undoubtedly a correct statement of the law and is amply supported by the adjudicated cases wherever the point has come in question. It affords support to the statement of the rule by the learned judge who wrote the opinion from which we have quoted above only when construed as we have indicated. That was a case in which a recovery in attachment was sought against the boat for wharfage due the city of Jeffersonville. The question arose on the sufficiency of the complaint which set out the ordinance, which provided that "all steamboats, barges, keel boats, flat boats, or other boats or rafts, coming to or landing at the wharves of said city, shall pay to said city, to wit: * * For every coal float used, etc., $200 per year payable, etc."

The statute authorizing the enactment of the ordinance is the 34th subdivision of section 3106, R. S. 1881, which confers on cities the power "To establish and construct wharves, docks, piers and basins; and to regulate landing places, *and fix the rates of landing, wharfage*, and dockage on all public grounds belonging to such city." * * * This court held in that case, and we think correctly under the statute above quoted, that "cities are expressly authorized * * * to fix rates of wharfage and dockage," and therefore expressly authorized to pass the ordinance above set out. And hence,

no question of the reasonableness of the ordinance could arise in that case because the Legislature had conferred the authority on the city to pass an ordinance of that specified and defined character, and the section of Dillon cited as above set out, and authorities there cited, as well as the facts, fully warranted the conclusion reached in that case, but neither the case then before the court, nor the authority cited warranted the statement of the abstract proposition quoted, unless construed as we have indicated above. The same question incidentally arose on an appeal to this court from a judgment for a personal injury through negligence of appellant in the *Cleveland, etc., R. W. Co.* v. *Harrington*, 131 Ind. 426, where the language above quoted from the coal float case is again quoted. The question there incidentally arose as to the validity of an ordinance limiting the speed of engines and trains within the corporate limits of the City of Indianapolis. This court held that the Legislature had expressly conferred the power on the city to pass such an ordinance. Therefore, when this court reached the conclusion which it correctly did in that case, that because the Legislature had conferred the power to pass the ordinance of the specified and defined character mentioned, it had decided all there was touching that point in the case, and the quotation from the coal float case was unnecessary to the decision; though the enunciation was correct in both of the cases with the construction we have placed upon it.

*Bills* v. *City of Goshen*, 117 Ind. 221, involved the validity of an ordinance requiring, among other things, a license for a roller skating rink, which provided that the same should be granted upon the payment of such sum as the mayor and common council should determine in each particular case. The 14th subdivision of section 3106, R. S. 1881, empowered cities "to regu-

late and restrain all tables, alleys, machines, devices, or places of any kind for sports or games, kept for hire or pay, * if deemed expedient, without a license  *  *  * to be provided for by ordinance.'' This court held the ordinance invalid because it placed the power to determine the amount of the license fee in each particular case in the mayor and common council instead of fixing the same in the ordinance. This was tantamount to holding that the ordinance was not a reasonable exercise of the power conferred by the statute. *First Nat'l Bank, etc.*, v. *Sarlls*, 129 Ind. 201, involved the validity of an ordinance making it ''unlawful for any person to alter, repair, or rebuild any frame or wooden building within the limits described, when the cost shall equal or exceed three hundred dollars.''

After recognizing the principle that cities in this State have ample power to enact and enforce reasonable ordinances in the absence of express statutory authority to secure protection against fire, the statute was referred to, conferring additional power, which authorizes cities ''to organize a board of public improvements, and empower such board to grant permits to build houses or additions thereto; to prevent the erection of wooden buildings in such parts of the city as the common council may determine.'' As applied to repairs, it was held that the ordinance was invalid because the statute did not empower cities to prevent the repair of wooden buildings in all cases. This is not at variance with the broad language used in the coal float case, *supra*, construed as we have indicated. We briefly quote from some of the cases cited in support of the text of section 319, of Dillon, cited as authority in the coal float case, *supra*. In *Haynes* v. *City of Cape May*, 50 N. J. L. 55, it is said: ''There are circumstances under which the court will inquire into the reasonableness of ordin-

ances passed by a municipal body under legislative powers granted to it.

"Those circumstances exist when the powers granted by the Legislature are expressed in terms general and indefinite. But where the Legislature has defined the delegated powers, and prescribed with precision the penalties that may be imposed, an ordinance within the powers granted, prescribing a penalty within the designated limit, can not be set aside as unreasonable."

And in another one of those cases it was said: "But the Legislature has granted ample power of legislation upon the subject of the erection and use of steam engines within the city limits, to the mayor and city council of Baltimore, independent of the power 'to prevent and remove nuisances.' They are clothed with the power to pass ordinances 'for the prevention and extinguishment of fires,' for 'securing persons and property from danger or destruction, * * *. It has been well said in reference to such general grants of power that as to the degree of necessity for municipal legislation on the subjects thus committed to their charge, the mayor and city council are the exclusive judges, while the selection of the means and manner (contributory to the end) of exercising the powers which they may deem requisite to the accomplishment of the objects of which they are made the guardians, is committed to their sound discretion. This discretion is very broad, but is not absolutely and in all cases beyond judicial control. * * And while we hold that this power of control by the courts is one to be most cautiously exercised, we are yet of opinion there may be a case in which an ordinance passed under grants of power like those we have cited, is so clearly unreasonable, so arbitrary, oppressive or partial, as to raise the presumption that the Legislature never intended to confer the power to pass it, and to justify the courts in in-

terfering and setting it aside as a plain abuse of authority." *Mayor, etc.,* v. *Radecke,* 49 Md. 217, 33 Am. Rep. 239.

In another of those cases it is said: "It is contended by the appellees that the town did not have the power to pass the ordinance. It is provided by statute that cities and towns have the power 'to establish and regulate markets; to provide for the measuring or weighing of hay, coal, or any other article for sale.' This statute expressly confers on cities and towns the power to provide for the measuring or weighing of hay, coal, or any other article. The manner in which the power conferred shall be exercised is left to the discretion of the corporation; subject, however, to the general rule that the ordinance must be reasonable." *Davis* v. *Town of Anita,* 73 Iowa, 325. To the same effect is *Meyers* v. *Chicago, etc., R. Co.,* 57 Iowa, 555, also cited in Dillon.

And in another of those cases the Supreme Court of California said: "On this subject, the rule is this: Where the Legislature in terms confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto can not be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental powers of the corporation, or under a grant of power general in its nature. In other words, what the Legislature distinctly says may be done can not be set aside by the courts because they may deem it unreasonable or against sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it

will be pronounced invalid.'' *Ex parte Chin Yan*, 60 Cal. 78.

To the same effect is *Ex parte Frank*, 52 Cal. 606, and many other cases cited in support of the text of Dillon, *supra*, and elsewhere too numerous even to cite, and we have been unable to find any case to the contrary, unless the two cases first above referred to in this court are to be so regarded. But as we have already intimated, we do not think they are to be regarded as against the current of authority, when the language employed in them is construed as we have done, and the cases were both correctly decided on the facts.

But before we can consider the question whether the ordinance here involved is a reasonable exercise of the powers vested in the corporation, we must inquire what the nature and extent of the powers are that have been conferred by the Legislature of this State upon municipal corporations; because if the Legislature has conferred the power to pass ordinances of the specified and defined character of the one here in question, according to the principles we have laid down above, then no inquiry can be made as to the reasonableness of the ordinance. In that event we would be limited in our investigation to the single question whether the act of the Legislature conferring the power was valid and constitutional or not.

The adjudicated cases cited by the appellee's counsel in support of the validity of the ordinance here in question were cases where the municipalities had been empowered by the Legislature of the State of Massachusetts to pass the particular and specified ordinances prohibiting the use of screens in saloons. No power has been conferred by the Legislature of this State on municipal corporations to pass ordinances of that particular character; that is, no statute has specified ordinances to prevent the use of screens by saloons as among those that

cities are empowered to pass.   Hence the cases cited by appellee's counsel are not only not in point here, but their influence is against appellee's contention, if they are entitled to any weight at all, because the enactment of such a statute in Massachusetts is a tacit recognition by the lawmaking power of that State that municipal corporations there had no power to pass ordinances of that kind without a statute specifically authorizing the same.   The statute upon which the claim is based in this case, that the corporation had the power to pass the ordinance here in question empowered cities "To regulate and license all inns, taverns, or other places used or kept for public entertainment; also all shops or other places kept for the sale of articles (liquors) to be used in and upon the premises" (Subd. 13, section 3106, R. S. 1881.); * * "and to regulate all places where intoxicating liquors are sold to be used on the premises."   R. S. 1881, section 3154, and the general welfare clause.

It would be difficult to conceive of a more general grant of power.   The two subdivisions of the sections referred to are almost as general and indefinite as the general welfare clause.   The power to legislate upon a given subject is conferred upon municipal corporations, but the mode of its exercise is not prescribed, and the kind of ordinances that they are empowered to pass is not specified or defined.   The Legislature has not said here what distinct or particular acts may be done by the corporation.   It has not said that municipal corporations may pass ordinances of the kind here involved.   If it had, that would end the inquiry.   As it has not, by the uniform current of authority, ordinances passed under such a general grant of power must be reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of

the State; otherwise it is the duty of the courts to declare them void.

We therefore hold that the ordinance here involved is open to the inquiry whether its passage is a reasonable exercise of the power conferred by the Legislature. It is strenuously insisted that the corporation, by the police power, is authorized to pass the ordinance in question, whether it is reasonable or unreasonable. The police power of the State, so far, has not received a full and complete definition. It may be said, however, to be the right of the State, or State functionary, to prescribe regulations for the good order, peace, health, protection, comfort, convenience and morals of the community, which do not encroach on a like power vested in Congress by the federal constitution, or which do not violate any of the provisions of the organic law. Of this power it may be said that it is known when and where it begins but not when and where it terminates. But this power, whatever may be its limits, resides in the State in its sovereign capacity, and can only be possessed and exercised by a municipal corporation by a delegation thereof to the municipality by the lawmaking power of the State. *City of Crawfordsville* v. *Braden*, 130 Ind. 149; 15 Am. and Eng. Encyc. of Law, 1166, 1167, and authorities there cited.

So that at last the validity of the ordinance depends upon whether it is a reasonable exercise of the power conferred or not. It forbids the erection or maintenance of door screens, window blinds, stained, ground, colored or darkened glass to the doors, windows or openings of any saloon, shop or other place where intoxicating liquors are sold to be used on the premises, or the erection or maintenance of any obstruction of any kind whatever, of such doors, windows or openings, that will obscure or prevent a full view of the interior of such saloon, etc.

*Provided,* That it is not to be so construed as to prevent such saloon keepers and other persons mentioned from having the usual and ordinary shutters to their doors.

Under this ordinance, if valid, it would make the use of the ordinary door screen or window shutters, window screens and window curtains to the doors or windows of a saloon unlawful, and it would likewise make it unlawful to maintain stained, ground, colored or darkened glass of any kind to any of such doors or windows.

We know of our own knowledge, common alike to all, that the use of door screens, window screens, window shutters, window curtains and blinds, ground, darkened and colored glass used in and to doors and windows are among the comforts and conveniences of civilized life. They are used in other business houses than saloons, in private residences, in public buildings and offices, in hotels and dining halls, in depots, in court houses, and in churches. Indeed, it may be said that they are necessary comforts and conveniences of civilized life, almost as much so as houses are to live in and to do business in. The protection of the occupants of such houses and places against the fierce rays of the sun in the proper use of such houses and places may be almost, if not quite, as necessary to protection against the storm and the rain, and the inclemency of the weather generally. It may be admitted that the evils arising from the sale of intoxicants have been so great that it has become the settled policy of the State, from the earliest times, to place and keep the traffic under stringent restrictions by the statutes of the State, and that these evils are often increased by violations of these statutory restrictions by licensed dealers. But we can not concur in the contention of appellee's counsel that the saloon "business is an illegitimate one, and that in order to make large profits therein it is necessary to constantly violate the law."

The business is one that any one could lawfully engage in, in the absence of any statute on the subject, and the statutes of the State, which, from time to time, have imposed restrictions and burdens upon the traffic, do not proceed upon the idea that the business is illegitimate, and seek to legalize an illegitimate business, but proceed upon the idea that the business is legitimate, and, owing to the evils arising from it, seek to place it under restrictions and burdens so as to lessen those evils.

Be this as it may, there is no reason in saying that because some saloon keepers violate the law all shall be deprived of the use of the necessary comforts and conveniences of civilized life in their business. If the corporation can make it unlawful for them to use screens to exclude flies and insects, they may make it unlawful for them to use shutters to their doors to exclude the cold, the storm, and the rain; if it can make it unlawful for them to use window shutters and window blinds and curtains, colored, stained, and ground glass in doors and windows of their saloons, under the pretense of permitting an unobstructed view into the interior of their saloons, the better to detect violations of the liquor law, then there is no reason why they can not be compelled to make the whole front of their saloons of solid glass, without any wood or any other material. Indeed, if the corporation has the power to make the ordinance here in question, for the reasons given in the preamble thereto, then it necessarily has the power by ordinance to compel them to open the whole front of their saloons, from one side to the other, without even the poor privilege of putting solid glass in as a protection against storm, rain, and the inclemency of the weather, and against theft and robbery.

This court, in *Decker* v. *Sargeant*, 125 Ind. 404, in hold-

ing an ordinance valid forbidding the use of screens by saloon keepers between 11 o'clock in the evening and 5 o'clock in the morning recognized the principle that such an ordinance might not be valid when applied to that portion of the day when the saloon keeper was authorized to sell under his license. There can be no doubt that such an ordinance would be within the power granted, and reasonable if it is confined in its operation to such times as the saloon keeper is not allowed to do business, as between 11 o'clock at night and 5 o'clock in the morning, on Sundays and legal holidays, and other days on which they are prohibited from doing business.

We are of opinion that the ordinance here involved goes beyond any power conferred upon the common council, either by express statute or by necessary implication, and, therefore, void.

The circuit court erred in overruling the demurrer to the complaint.

The judgment is reversed, the cause remanded, with instructions to sustain the demurrer to the complaint.

Filed Oct. 31, 1893; petition for a rehearing overruled June 8, 1894.