CITY OF PRINCETON *v.* WOODRUFF ET AL.

[No. 28,873. Filed April 7, 1952. Rehearing denied May 1, 1952.]

*Douglas H. McDonald, Gerald E. Hall,* and *Mark P. Lockwood,* all of Princeton; and *Wilbur F. Dassel,* of Evansville, for appellant.

*Harvey W. Garrett* and *Sanford Trippet,* both of Princeton; *Kimmell & Kimmell,* of Vincennes, and *Theodore Lockyear,* of Evansville, for appellees.

GILKISON, C. J.—This is an action by the City of Princeton, Indiana against M. Vernor Woodruff, its Mayor and twenty-five others, his appointees, praying that the mayor and such appointees be enjoined and restrained from retaining possession of any and all property, real and personal, belonging to the city; from interfering with, molesting or hampering appointees, of the common council of the city, in the performance of their respective duties; that the defendants, Woodruff and Garrett, be restrained from pretending to act as a board of public works and safety for the city; that upon a hearing each of the defendants be temporarily enjoined until a trial may be had, and that upon such trial the defendants be permanently enjoined as prayed, and for all other proper relief in the premises. The complaint is duly verified by all the members of the common council of the city.

Because of the temporary absence of the regular judge of the circuit from the state, as properly shown by affidavit, the matter was presented to the judge of an adjoining circuit, who after considering the verified complaint and approving a bond in the penal sum of $5,000 issued an order thereon in part as follows:

"... and the court being sufficiently advised in the premises, finds that plaintiff and petitioner is entitled to a restraining order as therein prayed.

"It is therefore ordered and considered by the said Judge that the defendants, and each of them, namely, M. Vernor Woodruff, James Belcher, John Stoll, Percy Dunn, Hosea Usery, Billie Foster, Clarence O'Neil, John Smith, Mildred Degenhart, Earnest Green, Charles Phillips, Ross Ritchie, Harold Hart, Howard Hart, Pearl Barrett, Aden Lloyd, Elwood Legg, Carl E. Johnson, Donald McIntyre, Theodore Hood, Frank Kimbrough, Habert Burns, Mildred Hitch, Harry Black, Delbert Chavis, Harvey W. Garrett, be, and they are now hereby restrained from retaining property in their possession or custody, both real and personal belonging to said city, and particularly in the custody of the water works department, the park department, the sewage disposal department, the street and sewer department, parking meter department and the legal department, and that they be restrained from interfering with or molesting or in any way hampering the performance of duties of each the said departments by the appointees named by the Common Council of the City of Princeton, Indiana, as set out in said complaint; until further order of the court, and until the 14th day of January, 1952, and the further order of court.

"It is further ordered that the defendants, and each of them, be notified that an application for a temporary injunction will be heard before the Judge of the Gibson Circuit Court in the court room in the city of Princeton, County of Gibson, State of Indiana, on the 14th day of January, 1952, at the hour of nine A.M. or as soon thereafter as counsel may be heard.

"It is further ordered that there issue to the Sheriff of said County a certified copy of this order, and that he be and he is now hereby directed to serve the same forthwith upon the defendants, and each of them, and make due return thereof."

Thereafter "M. Vernor Woodruff, James Belcher, John Stoll et al." filed their motion, verified by M. Vernor Woodruff to dissolve the restraining order, abate the action and all other proper relief.

On January 14, 1952, being the first judicial day of the Gibson Circuit Court the court ignored the motion to abate the action, heard the evidence, passed upon the merits of the petition for a temporary injunction and made its order on the application for temporary injunction only which, omitting caption, is as follows:

"Comes now the plaintiff by attorneys, Douglas H. McDonald and Mark P. Lockwood, and come also the defendants in person and by their counsel, Harvey W. Garrett, Kimmell & Kimmell and Sanford Trippet, this cause on this day on said restraining order and plaintiff's petition for temporary injunction being set for hearing and notice having been given the defendants. And now said defendants file their verified motion to dissolve the restraining order heretofore issued in this cause and to abate the action herein. The court now receives in evidence the plaintiff's verified application for restraining order and defendants' verified motion to dissolve the restraining order. The court now being duly advised in the premises dissolves said restraining order heretofore granted and finds that plaintiff's petition for temporary injunction should be and the same is hereby denied, to each of which rulings of the court the plaintiff at the time excepts."

From this interlocutory order refusing to grant a temporary injunction the appeal is taken. The record containing the bill of exceptions was filed in this court on January 22, 1952.

Appellees have filed a verified motion to dismiss the appeal for the reasons as follows:

1. That no appeal was prayed for.

2. That no appeal bond was filed.

3. That the controversy is now moot.

We shall discuss each of these reasons in the order named.

1. This is an appeal from an interlocutory order under §2-3218 et seq. Burns' 1946 Replacement. §2-3219 provides:

"Such appeal may be taken only within thirty [30] days from the date of the interlocutory order appealed from. To perfect such appeal, the appellant shall file an appeal bond as in cases of term appeals from final judgments, and shall file his transcript and assignment of errors, all within said period of thirty [30] days."

Rule 2-3 of the Supreme Court provides:

". . . All parties to the record in the trial court shall be parties on appeal without further notice. An appeal shall be initiated by filing in the office of the clerk below a praecipe designating what is to be embraced in the transcript. . . .

"No appeal bond shall be necessary to perfect an appeal from any judgment or appealable interlocutory order. . . ."

Appellant has complied with this rule and the statute fully, except to file an appeal bond. This brings us to the next reason.

2. §2-4717 Burns' 1946 Replacement provides as follows:

"In all actions· in which any city, or town, or those representing it in any official capacity, are entitled to pray or take an appeal of any kind, the same shall be granted or taken as to such city, or town, or such persons, without bond. Any term appeal so granted may be perfected without further notice at any time within the period of time allowed for perfecting general appeals in vacation.

"No proceedings shall be had to enforce any judgment against such city, or town, or such persons, and execution thereon shall be stayed pending an appeal therefrom.

"No bond or undertaking shall be required of any city, or town, or those representing it in any official capacity, in any proceeding or action, either by or against it, or them, in which any such bonds or undertakings are either now or may be hereafter required generally of any parties thereto."

This statute, an Act of 1931, Ch. 9, §1, p. 14, is a complete answer to the motion to dismiss the appeal for want of the filing of an appeal bond. By it the general assembly has expressly relieved cities and towns and those representing cities and towns from the necessity of filing appeal bonds. *Board of Public Safety of the City of Muncie et al.* v. *Walling* (1933), 206 Ind. 540, 545, 187 N. E. 385. Rule 2-3 *supra* authorizes an appeal from an interlocutory judgment without filing an appeal bond.

3. The motion shows that another action by different parties, No. 8578, involving some of the same questions presented in this case, was heard by the trial court immediately after this petition was heard, and that the court in cause No. 8578 made certain findings which may have been determinative of at least some of the questions in this case, as between the parties in that cause. There is no contention that the parties plaintiff were the same, or that the parties defendant were the same in the two causes, nor is there any contention that the City of Princeton, the real party in interest in this controversy, was a party in any capacity whatever in the cause No. 8578. The City of Princeton could not be bound by a judgment rendered in a cause in which it was not a party.

For the reasons noted the motion to dismiss the appeal is denied.

Since the trial court ignored the motion to abate the action and passed upon the merits of the petition

for a temporary injunction upon the issues as presented by the parties, without objection from either party, we shall follow the same procedure. *State ex rel. Reiman* v. *Kimmell* (1937), 212 Ind. 639, 646, 10 N. E. 2d 911; *State ex rel. Cline* v. *Schricker* (1949), 228 Ind. 41, 44, 88 N. E. 2d 746, 89 N. E. 2d 547.

Princeton is a city of the fifth class.

The issues presented by the complaint and passed upon by the trial court present the following questions:

1. Whether the mayor, or the common council of the city is charged with the right and duty of operating the municipally owned water plant, and of selecting its officers and employees?

2. Whether the mayor, or the city council shall determine whether the board of public works and safety should be composed of the mayor, city attorney and one member of the city council, or by the mayor and two members of the city council?

3. Whether the mayor, or the board of public works and safety should control the operation and maintenance, including bookkeeping for, and handling records of funds from mechanical parking devices of the city?

4. Whether the mayor, or the common council of the city or board of public works and safety, should have charge of the operation and maintenance of the municipal sewage works of the city and select the officers and employees thereof?

5. Whether the mayor, may appoint a park supervisor of the city without the approval of the common council of the city?

6. Whether the mayor or the common council, in case of the non-existence of a board of public works and safety, shall appoint a superintendent of street and

sewer commissioner, and laborers for the maintenance and operation of the streets and sewers?

7. Whether the mayor or the common council of the city is charged with the right and duty of selecting a city attorney for the city?

We shall dispose of the questions presented in the order stated.

1. Among the powers and duties that may belong to the board of public works may be the operation of any public utility belonging to such city. (§54-613, Burns' 1951 Replacement). In fifth class cities the powers and duties of the board of public works and the board of public safety were transferred to and vested in the board of public works and safety by §§7 and 8 of the Reclassification Act of 1933 (Ch. 233, p. 1042, 1046), as amended by Acts 1949, Ch. 26, §1, p. 72 and being §48-1219, Burns' 1950 Replacement. See also *City of Lebanon* v. *Dale* (1942), 113 Ind. App. 173, 46 N. E. 2d 269. The record conclusively shows that in 1940 when the municipal waterworks was acquired, the common council of the city by its ordinance 1940-2, as appears in minute book 12 page 148 of the city, provided among other things: "that the authority for the operation of the municipal water plant of said city shall hereafter be vested in the common council of said city as provided by Sec. 19 of Chapter 190 of the Acts of 1933" pages 955 to 958 inclusive; §54-613, Burns' 1951 Replacement, *supra*. This statute provides among other things, as follows:

"In the operation of any utility now owned by any municipality in this state, or any utility that may hereafter be constructed or acquired by any municipality in this state, the municipal council of any such municipality may operate such utility, or it may provide for the operation thereof by a committee of its own members, or it may by ordi-

nance establish for that purpose a utility service board; . . . ."

See also §48-7205, Burns' 1950 Replacement.

It is further conclusively shown that on January 1, 1952 at about 12:15 P.M. appellee, Woodruff, as mayor of the city convened a special session of the common council of the city which was attended by all the members. That at that special meeting the council unanimousy adopted a resolution No. 1-52 providing that pursuant to the statutes and the aforesaid ordinance it then appointed "Faye Ellington superintendent of said municipal water works," and as employees of said municipal water works, Floyd Schroyer and Alva Shanks, maintenance; Wayne Reeser, Ed Finney and Elmer Goodson, pumpers; Mary Wade, cashier; Dorothy Parrett, bookkeeper, and Ellis Anderson, janitor. Thereupon the common council issued to the appointed superintendent a commission of appointment, who on the same date gave his bond as such superintendent. That said superintendent and the employees mentioned have duly qualified and attempted to perform their duties.

That the efforts of these employees to perform their respective duties are opposed by a group of persons claiming authority to act as employees of the waterworks department by reason of a pretended appointment by appellee, Woodruff, mayor, on January 2, 1952. This list includes the appellees, James Belcher, as superintendent, John Stoll, Billie Foster, Clarence O'Neil, maintenance; Perry Dunn, Hosea Usery, John Smith, pumpers; Venita Wagner, bookkeeper; Mildred Degenhart, cashier and Earnest Green, janitor. The opposition consists in wrongfully retaining possession of trucks, keys and other property belonging to the city

and hampering the employees appointed by the common council in the performance of their work and duties.

From the statutes, ordinances and the resolution, quoted and cited it seems quite evident that the superintendent and employees of the water-works of appellant city were legally selected and appointed by the common council of the city. It is the authority provided by statute to make such selections and appointments, and it has acted in the matter agreeable with the city ordinance No. 1940-2 enacted in 1940 when the city acquired the municipal water plant. It was an error and abuse of judicial discretion to refuse to grant a temporary injunction against the mayor and the several persons whom he appointed as superintendent and other employees heretofore named to operate the municipal water-works of appellant city.

2. The statute provides that the board of public works and safety, ". . . shall be composed either of the mayor, the city attorney, and a member of the common council to be selected by the mayor, or of the mayor and two members of the common council to be selected by the mayor." §48-1219. Acts 1949, Ch. 26, pp. 72, 73. Under this statute two methods are provided for the selection of the board of public works and safety. This action presents the question, what authority shall determine which of the two methods shall be followed? It was decided by this court long ago that "If there are two ways of attaining an authorized municipal end, and both of such ways are proper, the governing body has a choice as to which of such means it will select; . . . ." *Scott* v. *City of LaPorte* (1903), 162 Ind. 34, 46, 68 N. E. 278, 69 N. E. 675; *Champer* v. *City of Greencastle* (1894), 138 Ind. 339, 342, 35 N. E. 14; See also §§12.74, 12.101 McQuillin Municipal Corporations (3rd Ed.) ; 37 Am. Jur.,

Municipal Corporations, §§46, 52, pp. 662, 666, 667; §48-501, Burns' 1950 Replacement; *Hankins et al.* v. *State ex rel. Miller* (1940), 217 Ind. 225, 233, 27 N. E. 2d 365.

We approve a statement upon abundant authority made in 62 C. J. S., Municipal Corporations, §153, p. 313, thus:

"While the governing body of a municipal corporation is not the corporation itself, howsoever constituted, the council or other governing body is the general agent of the corporation for all purposes and exercises all the corporate powers not expressly committed by law to other boards or officers. Whether a corporation has one or more legislative bodies, they are properly called governing bodies, . . . and are all subject to the same legal rules and regulations."

See also §386 same volume and title.

The record affirmatively shows that since the amendatory Act of 1949, Ch. 26, pp. 72, 73, *supra,* no board of public works and safety had been appointed in appellant city. It further shows that at the special session of the common council of the city convened on January 1, 1952 as aforenoted, it adopted resolution 2-52, which among other things provides "that after the first day of January, 1952 the board of public works and safety of the city of Princeton, Indiana should be composed of the mayor and two members of the common council to be selected by the mayor." This is agreeable with the 1949 amendment above noted. It became and is the law controlling the mayor in the selection of the personnel of the board of public works and safety of appellant city. *State ex rel. Walker* v. *Wagner* (1907), 170 Ind. 144, 147, 82 N. E. 466. Many years ago it was decided by this court that:

".  .  . where the city council has power to act in a given case, and its charter does not prescribe the manner of action, it may accomplish its purpose by resolution as well as by ordinance. . . ."

*The City of Crawfordsville et al.* v. *Braden* (1891), 130 Ind. 149, 162, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. Rep. 214. See also 37 Am. Jur., Municipal Corporations, §52, pp. 666, 667; 62 C. J. S., Municipal Corporations, §160, p. 322; Beach on Public Corporations, §163, p. 176. The attempted selection of the board of public works and safety by the appellee mayor in contravention of the resolution of the common council noted, is wholly illegal and void and vests in the appointees no authority to act as such.

3. The evidence further conclusively shows that a lawful ordinance of the city No. 1949-5 among other things, provides: "that the board of public works and safety of the city of Princeton, Indiana should have the operation and maintenance, including bookkeeping, handling of records of funds derived from mechanical parking devices in the city . . . ." This ordinance is the controlling law in the matter of the selection of the personnel for the operation and maintenance of the mechanical parking devices in the city of Princeton. Under it the personnel shall be selected by the board of public works and safety, which board shall be composed and selected as heretofore set forth in 2. It was error to refuse a temporary injunction to prevent the persons selected by the mayor from attempting to operate such mechanical parking devices. §48-1406, Burns' 1950 Replacement; Acts 1905, Ch. 129. *State ex rel. Walker* v. *Wagner* (1908), 170 Ind. 144, 147, 82 N. E. 466, *supra.*

4. The evidence conclusively shows that a valid ordinance of appellant city enacted in 1934, and numbered 1934-9, appearing in minute book 11 at page 395, Sec. 6-b of the city, among other things, provides: "The construction, acquisition and improvement, equipment, operation and maintenance of said sewage works shall be under the supervision and control of the board of public works of the city of Princeton, Indiana."

What we have said in answering questions 2 and 3 applies with equal effect to the employees operating the municipal sewage plant. It was error to deny the temporary injunction against the mayor's pretended appointees for the operation of the sewage works.

5. It has been the law for many years that:

"The appointment of a person to a city office by a mayor under a law which requires confirmation by the council gives the appointee no right to the office without such confirmation by the proper and legal council."

Beach on Public Corporations, §164, p. 177. See also 67 C. J. S., Officers, §32, p. 160.

The evidence conclusively shows that by an ordinance enacted in 1945, No. 1945-4, the common council of the city provided that: "The park supervisor shall be appointed by the mayor with the approval of the common council." The evidence further shows that the mayor appointed the appellee, Ross Ritchie, park supervisor, and that the common council by its resolution No. 5-52 refused to approve the appointment. This left the appointee, Ritchie, without authority and leaves the position vacant. It should be filled by appointment agreeable with the ordinance noted.

6. It is not necessary to discuss question 6 since its answer, so far as applicable to this case, will be found in our answers to questions 2 and 3. When a █ lawful board of public works and safety is selected, it will immediately make the necessary selections and appointments of personnel to perform the various operational functions of the city, agreeable with the several statutes of the state and the ordinances of the city, without the necessity of ad interim appointments.

7. By its Acts of 1905, Ch. 129, p. 219, §90, p. 275; §48-1801, Burns' 1950 Replacement, the general assembly provided for the appointment of city █ attorneys by the city mayors, "except that in cities of the fifth class the city attorney shall be appointed by the common council." This part of the statute was reenacted by an amendment óf §90, in Acts 1909, Ch. 122, p. 312. By its Acts 1933, Ch. 233, p. 1042, §8, p. 1046-1047, §48-1219, Burns' 1950 Replacement, the general assembly provided that in cities of the fifth class "The mayor shall appoint a city attorney, . . . ." This section was amended by Acts 1949, Ch. 26, p. 72, §48-1219, Burns' 1950 Replacement, *supra*, in which it was reenacted that "The mayor shall appoint a city attorney, . . . ." So far as we can find, this is the last expression of the legislative will on this subject except a general provision providing the qualifications for a city attorney contained in Acts 1949, Ch. 101, §2, p. 243; §48-1805, Burns' 1950 Replacement, and it is therefore controlling law on the subject at the present time. It conclusively appears from the evidence, that M. Vernor Woodruff, Mayor of Princeton, on January 2, 1952 appointed Harvey W. Garrett, attorney for the City of Princeton. This is an appointment the mayor had a right and duty to make, and

the petition for temporary injunction was properly denied as to the appointment of the city attorney.

It is therefore ordered that the judgment of the Gibson Circuit Court be and the same is reversed with instructions to grant the temporary injunction as prayed for, except as to the appellee, Harvey W. Garrett, as to him the order denying a temporary injunction is affirmed.

Draper, J., dissents with opinion.

Jasper, J., concurs with dissent.

## DISSENTING OPINION

DRAPER, J.—The city of Princeton is one of the 64 cities of the fifth class in the State of Indiana. In the November, 1951, election a mayor and five councilmen were chosen. The mayor is of one political persuasion and the councilmen another. They all took office January 1, 1952. The council promptly passed the resolutions mentioned in the majority opinion. The mayor attempted to appoint a city attorney, a board of public works and safety, and other officials. This litigation ensued.

I agree that the mayor has the right to appoint a city attorney. Perhaps the most important question that remains to be decided is whether he has the right to appoint the board of public works and safety. The majority holds he does not have that right. I think he does.

Acts 1933, ch. 233, §8, Burns' 1933, §48-1219, provides in part as follows:

"The duties of the board of public works and of the board of public safety as now provided by law shall be performed by a board to be known as the "Board of public works and safety," which shall be

composed of the mayor, the city attorney, and a member of the common council to be selected by the mayor."

By Acts of 1949, ch. 26, §1, Burns' 1950 Replacement, §48-1219, the Act was amended, with regard to the composition of the board of public works and safety, to read as follows:

"The duties of the board of public works and of the board of public safety as now provided by law shall be performed by a board to be known as the 'Board of public works and safety,' which shall be composed either of the mayor, the city attorney, and a member of the common council to be selected by the mayor, or of the mayor and two members of the common council to be selected by the mayor."

It will be noted that before the amendment the board of public works and safety was composed of the mayor, the city attorney and one member of the common council to be selected by the mayor. Under the section as amended the board of public works and safety is to be composed either of the mayor, the city attorney and a member of the common council to be selected by the mayor, or of the mayor and two members of the common council to be selected by the mayor. In the law as originally written the selection of those who would serve with the mayor was left entirely to the mayor. The amendment made no change in that respect. It simply gave the mayor a broader discretion in the matter of selection.

The first rule of statutory construction is, of course, to determine and give effect to the legislative intent. It seems to me the legislative intent was to broaden the mayor's range of choice, to increase the field of eligibility. Nothing in the Act indicates to me an intention to permit the city council to limit or control the mayor's

right to select the other members of the board. To the extent that the council seeks to limit the field from which the mayor may choose the membership of the board, I think they seek to usurp the power of selection and arrogate to themselves an unmerited function. I cannot find in the fact that the legislature saw fit to broaden the field of choice, an intent or purpose to permit the council or anyone else to restrict it.

A city council cannot lawfully forbid what the legislature has expressly authorized. The council does not have the power to veto legislative enactments. Yet the court says, in effect, it can do so. Before the 1949 amendment the mayor could select one councilman to serve with himself and the city attorney. By the 1949 amendment he could, instead, select two councilmen to serve with him. By resolution the city council said he *must* choose two councilmen. If, instead, they had elected to say he *must* choose one councilman to serve with the city attorney, would not the effect be to veto the 1949 amendment?

Available data seems to confirm my conclusion concerning the legislative intent. The House Bill Digest dated January 29, 1949, recites that:

> "This Bill amends Section 8 of an Act concerning certain civil cities and the provisions of the amendment make it possible that mayors of cities of the fifth class may appoint a member of the Common Council in lieu of the City Attorney for which the Act now provides."

The Indiana Municipal League issued the following bulletin concerning this legislation on February 9, 1949:

"TO—MAYORS, COUNCILMEN, CLERK-
TREASURERS AND CITY ATTORNEYS
OF FOURTH AND FIFTH CLASS CITIES

"RE: . . . . . .

"*HOUSE BILL* 31—CITIES OF FIFTH
CLASS MAY APPOINT SECOND COUN-
CIL MEMBER ON BOARD OF PUBLIC
WORKS, IN LIEU OF CITY ATTORNEY.
(Affects Fifth Class Cities only)
". . . . .

"H.B. 31 affects only fifth class cities. Copy
of bill is not enclosed because it changes only
eighteen words of the Acts of 1933.

"This H.B. 31 amends the Acts of 1933, p. 1042;
Burns 48-1219, to read that in cities of the fifth
class the Board of Public Works and Safety 'shall
be composed *either* of the mayor, the city attorney,
and a member of the common council to be selected
by the mayor, *or of the mayor and two members of
the common council to be selected by the mayor.*'

"This bill passed the House January 31 by a
vote of 91-1. It is now in Senate CITIES AND
TOWNS COMMITTEE composed of the Senators
above listed.

"H.B. 31 appears to be a good bill. It is only per-
missive legislation. The proposed change is not
mandatory. It may possibly fit the needs of your
particular city.

". . . . . .

"Sincerely,
"W. Vincent Youkey  (Sgd.)
"W. Vincent Youkey
"Executive Secretary"

I have no quarrel with the proposition, as announced
in *Scott* v. *City of Laporte* (1904), 162 Ind. 34, 68
N. E. 278, 69 N. E. 675, that "If there are two ways
of attaining an authorized municipal end, and both of
such ways are proper, the governing body has a choice
as to which of such means it will select; . . ." However,

it seems wholly irrelevant to the problem presented. In the first place, I do not believe the organization of a board of public works and safety is a "municipal end." It could at most be a "means to an end." I think if the legislature gave a city the right to acquire a public parking lot by lease or purchase, the council could determine whether the city should lease or purchase. If the legislature gave a city the right to buy or build an electric light plant, the city council could decide whether to buy or build. It could choose either of the alternative methods to accomplish the purpose. But here there is no choice of methods. Only one method is provided. That method is *selection by the mayor*.

If the statute defined the board and provided that it might be selected *either by the mayor or the council* I would think the council could determine which authority should do so, but the statute does not so provide. It gives the mayor, and only the mayor, the right to designate those who shall serve with him on the board, and leaves it to his discretion whether he shall choose two council members, or one council member to serve with the city attorney and himself. It seems to me that the construction agreed upon by the majority is somewhat narrow and unrealistic, and quite likely to increase the difficulties under which mayors of fifth class cities labor.

Jasper, J., concurs.

NOTE.—Reported in 104 N. E. 2d 748.