Gary E. Massey Winter Springs City Attorney Altamonte Springs
QUESTION:
Under the Charter of the City of Winter Springs, who has the authority to appoint councilmen to head the departments of the city?
SUMMARY:
A municipal charter which vests all powers of the city in the governing body and which authorizes the mayor `to appoint a member of the city council to supervise and direct any particular phase of the government of the city . . .' contemplates a commission form of government wherein executive and legislative power is vested in the city council. Under such charter, the mayor is authorized to select a councilman and assign or appoint him to supervise and direct a particular phase of the municipal government.
As a general rule, the council or other governing body of a municipal corporation is the general agent of the corporation for all purposes and exercises all the corporate powers not expressly committed by law to other boards or officers. 63 C.J.S. MunicipalCorporations s. 153, p. 313. With respect to the power of appointment to municipal boards or agencies, the general rule is that, in the absence of a charter provision authorizing the mayor or some other officer to exercise such power, the council or governing body is the only agency which may exercise the power to appointment. Ex Parte Stone, 192 P. 71 (Cal. 1920); City of Princeton v. Woodruff, 104 N.E.2d 748 (Ind. 1952); Foti v. Montero, 146 So.2d 789 (La. 1962). Thus, unless the charter so directs, the mayor has no authority to appoint municipal officers.
The mayor, on the other hand, is generally deemed to be the chief executive officer of the city. 63 C.J.S. Municipal Corporations s. 542, p. 998. However, the actual functions and powers of the mayor are derived from and depend entirely on the municipal charter; the mayor possesses only those powers expressly granted or necessarily implied therefrom. Cf., Municipal Court, City of Fort Lauderdale v. Patrick, 241 So.2d 195 (Fla. 1970), aff'd 254 So.2d 193 (Fla. 1971), in which the court held that a city charter provision authorizing the mayor to take command of the police force and govern by proclamation under the direction of the city commission during times of grave public emergency did not confer authority on the mayor to establish a curfew in an area of the city affected by riot, in view of another provision of the city charter which vested the legislative power in the council and required that enactments of a penal nature be effected by ordinance. The mayor's functions as prescribed in the municipal charter differ in various municipalities. The mayor's power may be legislative, executive, or judicial, according to the particular governing law. In some cities, the mayor as chief executive has supervision over the minor officers of the municipality not expressly made subject to the control of other officers or boards, while in others his powers are primarily executive and administrative and, as the executive head of the municipality, he has general supervision over all the departments of the city government. See 63 C.J.S.Municipal Corporations s. 543(a), p. 999.
It would appear that an important factor in considering the relationship of the mayor to the city council, and the allocation of legislative and executive power between elected municipal officers, is the form of city government which is contemplated by the city charter. In McQuillan Municipal Corporations s. 912, p. 643, the author lists various types of municipal government, the most common of which are the mayor-and-council or aldermanic plan, the commission-manager plan, and the commission plan. Each of these plans comprehends different powers and functions of the mayor and the governing body.
In the mayor-and-council system, the executive and administrative affairs of the municipality are in the hands of the mayor, while the legislative power is vested in the council. McQuillanMunicipal Corporations s. 9.17, p. 655. The municipal charter generally gives to the mayor the power of appointment of all principal officers, except those who are elected. Id.
In the commission form of government, the commissioners or members constitute a municipal board and exercise all municipal powers, including legislative, executive, administrative and judicial powers. McQuillan Municipal Corporations s. 9.18, p. 661. The commission plan has been held constitutional in most states, the courts reasoning that constitutional principles of separation of powers are not applicable to municipalities. Id; also see Kaufman v. City of Tallahassee, 94 So. 697, 699 (Fla. 1923). In some cities possessing the commission form, the electors vote by name for an individual commissioner to take charge of a department; in others, the commissioners as a body assign the commissioners to various departments. Id. at 667. Each commissioner then serves as the head of, and administers, the departments for which he is responsible. Id.
The commission-manager form of government places the executive and administrative functions in the hands of a city manager. McQuillanMunicipal Corporations s. 9.21, p. 678. 63 C.J.S. MunicipalCorporations s. 543(b), p. 999. The commission constitutes a legislative or policymaking body which generally supervises the city manager. See Bryant v. City of Lakeland, 28 So.2d 106 (Fla. 1947). The city charter may authorize the city manager to appoint department heads. See Glendinning v. Cherry, 14 So.2d 794 (Fla. 1943).
An examination of the Winter Springs City Charter (Ch. 72-718, Laws of Florida) reveals that the form of government provided therein does not exactly conform to any of the three forms discussed above. The charter provides for a five-member city council and a mayor. Sections 4.01, 4.05, Art. IV, Winter Springs City Charter. The general powers and duties of the council are set forth at s. 4.06, Art. IV:
 All powers of the city shall be vested in the council, except as otherwise provided by law or this charter, and the council shall provide for the exercise thereof and for the performance of all duties and obligations imposed on the city by law. (Emphasis supplied.)
In addition, s. 7.01, Art. VII, states that the council
 may establish city departments, officers or agencies in addition to those created by this charter and may prescribe the functions of all departments, offices and agencies. (Emphasis supplied.)
The powers and duties of the mayor are provided in s. 4.05, Art. IV:
 At each regular election, a mayor shall be elected for a term of two years. He shall preside at meetings of the council, shall be recognized as head of the city government for all ceremonial purposes, and be the governor for purposes of military law. . . . [T]he mayor of the city shall be the chief executive officer of the city and shall act and serve as chairman of the city council. The mayor shall not vote except in case of a tie vote of the council. The mayor may appoint a member of the city council to supervise and direct any particular phase of the government of the city. Within ten days after the adoption of any ordinance by the city council, the mayor shall have the power to veto said ordinance and return it to the council at the next regular meeting with a written message. It shall require a two-thirds vote of the city council to pass the ordinance after the mayor's veto. (Emphasis supplied.)
Other duties of the mayor are set forth in other parts of the charter and include, inter alia, the authority and duty, subject to the approval of the council, to appoint a city clerk (s. 4.10, Art. IV), to appoint a city attorney (s. 7.02, Art. VII), and to prepare the city's budget for submission to the city council (s.8.02, Art. VIII).
It should be noted that under Art. VI of the charter, the city council is authorized, but not required, to appoint a city manager who shall be `chief administrative officer' of the city. However, I have been informed that the city council has not appointed a city manager; the town is currently governed by the mayor and council.
When ss. 4.01 and 4.05, Art. IV of the charter are read together, it is apparent that all power (executive, legislative, and administrative) is vested in the city council, except as otherwise provided by law or the charter. Thus, although the mayor is designated `chief executive officer,' in reality the mayor possesses only those executive powers which have been expressly granted him; the council is vested with all other executive powers. Cf. s. 6.03, Art. VI, Ch. 72-718, Laws of Florida, providing, inter alia, that the city manager shall be responsible to the city council for all administrative affairs placed in his charge by or under the charter and shall perform such other duties as may be required of him by the council.
It appears, therefore, that the charter (absent implementation of ss. 6.01-6.03, Art. VI of the charter by the city council by appointment of a city manager) essentially contemplates a commission form of government where the mayor is authorized to determine which councilman shall administer a particular phase of the municipal government. There is no provision in the charter which makes the mayor's assignment or appointment of the councilmen to supervise and direct particular phases of city government subject to the approval of the council; therefore, the council is not authorized to approve or disapprove the mayor's choices. Cf. Indyk v. Klink, 297 A.2d 5 (N.J. 1972), holding that, where a governing statute provided that all administrative functions were to be allocated to one or another of the municipal departments with the head of each department appointed by the mayor, the town council was unauthorized to appoint a city attorney or city manager. Moreover, it might further be noted that the authority of the mayor to appoint a councilman to supervise and direct any particular phase of the city government relates to the form of government and the distribution of powers among elected officers. See s. 166.021(4), F. S. Changes in the form of municipal government and the distribution of powers among elected officials cannot be made by the city council pursuant to its home rule powers under Ch. 166, F. S., without approval by referendum of the city's electors as provided in s. 166.031, F. S. In the absence of such approval, the cited provisions of the charter act govern and control both the city council and the mayor in this regard.
The foregoing analysis of the City of Winter Springs Charter harmonized and gives effect to each of the subject provisions of the charter and further permits the mayor and the council to each possess their own `lawful spheres of operation.' See generally, Alsop v. Pierce, 19 So.2d 799 (Fla. 1942).
Prepared by: Patricia R. Gleason, Assistant Attorney General